RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0252p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOSEPH J. PLATT; PLATT FOR JUDGE CAMPAIGN
COMMITTEE; MARK W. MILLER,

         *Plaintiffs-Appellants*,

    *v.*

BOARD OF COMMISSIONERS ON GRIEVANCES AND
DISCIPLINE OF THE OHIO SUPREME COURT, et al.,

         *Defendants-Appellees*.

No. 14-3037

> Appeal from the United States District Court
> for the Southern District of Ohio at Cincinnati.
> No. 1:13-cv-00435—Michael R. Barrett, District Judge.

Argued: August 8, 2014

Decided and Filed: October 8, 2014

Before: GIBBONS and McKEAGUE, Circuit Judges; LAWSON, District Judge.*

_____

## COUNSEL

**ARGUED:** Curt C. Hartman, THE LAW FIRM OF CURT C. HARTMAN, Amelia, Ohio, for Appellants. Zachery P. Keller, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** Curt C. Hartman, THE LAW FIRM OF CURT C. HARTMAN, Amelia, Ohio, Christopher P. Finney, FINNEY LAW FIRM LLC, Cincinnati, Ohio, for Appellants. Zachery P. Keller, Bridget E. Coontz, Darlene Fawkes Pettit, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

_____

*The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**OPINION**

---

McKEAGUE, Circuit Judge.   As a judicial candidate, Joseph Platt wants to openly endorse other candidates, personally and directly solicit campaign funds, and receive campaign contributions without time limitations.   But he cannot do so because the Ohio Code of Judicial Conduct prohibits these activities.   He sought to preliminarily enjoin enforcement of these parts of the Code under the First and Fourteenth Amendments, but the district court denied his request. At this early stage—reviewing the denial of a preliminary injunction on interlocutory appeal— we agree with the district court and thus affirm.

**I.**

**A.**

Because Ohioans elect their state-court judges, Ohio Const. art. IV, § 6, aspiring judges run for office.   When campaigning, these candidates must follow the Ohio Code of Judicial Conduct.   Ohio Code J. Cond. Application I(A).   Promulgated by the Ohio Supreme Court, *see* Ohio Const. art. IV, § 5(B), the Code places certain limits on a candidate's campaign-related speech to help maintain an "independent, fair, and impartial judiciary"—one free of "both impropriety and the appearance of impropriety."   Ohio Code J. Cond. Pmbl. ¶¶ 1–3.   After our decision in *Carey v. Wolnitzek*, 614 F.3d 189 (6th Cir. 2010), striking certain parts of the Kentucky Code of Judicial Conduct, Ohio narrowed its Code.   As amended, all judicial candidates—incumbents and challengers—are subject to Canon 4 of the Code, which places restrictions on direct, personal monetary solicitation, Ohio Code J. Cond. 4.4(A); bans public political party speeches and endorsements of another candidate, *id.* at 4.1(A)(2)–(3); and restricts a candidate's campaign committee from receiving money earlier than 120-days before the primary, *id.* at 4.4(E)–(G).

The Supreme Court's Board of Commissioners on Grievances and Discipline, a defendant here, enforces the Code by disciplining its violators.   The Board also enforces the Ohio Rules of Professional Conduct, which independently prohibit Ohio attorneys from violating

the Code. *See* Ohio R. Prof. Conduct 8.2(b). A separate office—the Office of Disciplinary Counsel, also a defendant here—investigates and prosecutes suspected violators of the Code.

**B.**

Joseph Platt, an attorney who wishes to run for Ohio judicial office, formed his Campaign Committee by filing a Designation of Treasurer Form on June 20, 2013. As part of his campaign, Platt wanted to publicly endorse other candidates, directly solicit campaign funds in person, and receive campaign contributions without the Code's time limitations. But he could not, at least without facing penalties, because the rules of Canon 4 prohibited him from doing so. Platt sued to preliminarily enjoin enforcement of these rules as applied to non-sitting judicial candidates under the First and Fourteenth Amendments.

On January 6, 2014, the district court denied Platt's request. It first held that Platt failed to show a strong likelihood of success on the merits of his First Amendment claims. It then held that Platt's requested injunction—which would apply only to *non*-sitting judicial candidates— would cause substantial harm to *sitting* judicial candidates because they would still be subject to the Code's restrictions. The district court therefore concluded that the balance of equities did not tip in Platt's favor and that the injunction was not in the public interest. Balancing the proper factors, the district court denied the preliminary injunction. Platt then appealed.

**II.**

On August 8, 2014, we heard oral arguments. Until then, all involved assumed that Platt fell within Ohio's Judicial Code because Rule 4.6(F) defines "judicial candidate" as "a person who has . . . declared or filed as a candidate for judicial office with the election authority," and Platt had filed his initial form. *See* Appellant Br. 4; Appellees' Br. 11–12. But during the argument, Platt admitted that he failed to file the required petitions to appear on the ballot in 2014. He also apparently missed the deadline to declare his intent to run as a write-in candidate—his last chance for eligibility in 2014—which expired seventy-two days before the general election (August 25, 2014). *See* OHIO REV. CODE § 3513.041. So despite Platt's still-existing Campaign Committee and his alleged desire to run for judicial office in the future, Platt will not in fact be a candidate in the 2014 election. Given this fact, we must first determine

whether we have Article III jurisdiction to hear Platt's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–03 (1998).

## A.

The standing requirement ensures that the plaintiff has a personalized injury that the court can directly redress. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). And the ripeness requirement prevents courts from hearing premature or abstract disagreements. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967); *Carey*, 614 F.3d at 196–97. These doctrines "originate from the same Article III limitation" and may be analyzed together as part of "standing." *E.g.*, *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 n.5 (2014); *Kiser v. Reitz*, ___F.3d___, No. 13-3956, 2014 WL 4211193, at *3 (6th Cir. Aug. 27, 2014).

To have standing, the plaintiff must have suffered "injury in fact"—a "concrete and particularized" or "actual or imminent" injury. *Lujan*, 504 U.S. at 560. But in a pre-enforcement review case under the First Amendment (like this one), courts do not closely scrutinize the plaintiff's complaint for standing when the plaintiff "claims an interest in engaging in protected speech that implicates, if not violates, each [provision of the law at issue]." *Carey*, 614 F.3d at 196; *see also Steffel v. Thompson*, 415 U.S. 452, 459 (1974). A plaintiff meets the injury-in-fact requirement—and the case is ripe—when the threat of enforcement of that law is "sufficiently imminent." *Susan B. Anthony List*, 134 S. Ct. at 2342. This occurs when (1) the plaintiff alleges "an intention to engage in a course of conduct" implicating the Constitution and (2) the threat of enforcement of the challenged law against the plaintiff is "credible." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979).

Platt has alleged a sufficient injury in fact. First, from the formation of his Campaign Committee onward, Platt has desired to engage in political speech (certainly implicating the First Amendment) that violates the Code. *Id.*; *see also Kiser*, 2014 WL 4211193, at *4–5. And second, Platt's fear that the Board may enforce the Code against him is credible. His Campaign Committee remains in place, and he could begin campaigning for another election today—which the State recognized at oral argument. And when campaigning, he wishes to publicly endorse candidates, personally and directly solicit campaign funds, and begin receiving campaign contributions earlier than 120-days before the primary—all of which the Code restricts. These

parts of the Code "at least chill, and in some instances prohibit, [Platt's desired] forms of communication." *Carey*, 614 F.3d at 196. Platt thus must "censor[] himself" to avoid violating the Code, which amounts to a "credible fear of enforcement." *See id.* (holding that an analogous challenge to the Kentucky Code of Judicial Conduct was justiciable under Article III); *see also Kiser*, 2014 WL 4211193, at *5–6.

Two more considerations support our conclusion that Platt has standing. First, as in *Susan B. Anthony List*, any person—not just a prosecutor or state agency—may initiate enforcement of the Code. *See Filing a Grievance*, The Supreme Court of Ohio & The Ohio Judicial System, http://www.supremecourt.ohio.gov/DisciplinarySys/odc/complaint.asp (last visited Oct. 7, 2014). This feature of the Code "bolster[s]" the credibility of enforcement. *Susan B. Anthony List*, 134 S. Ct. at 2345. And second, when directly asked at oral argument, the State refused to disavow the enforcement of the Code as applied to Platt, further adding credibility to Platt's alleged fear. *See id.*; *see also* Appellees' Br. 11–12. Platt's asserted fear is credible, and he has therefore alleged an injury in fact that is ripe for judicial review.

**B.**

But has Platt's case become moot because he is no longer actually running for judicial office in 2014? The mootness requirement ensures that the plaintiff's stake in the outcome of the case remains personal. *See Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). And Platt seems to have lost his personal stake: The only form he filed to become a "judicial candidate" lists "2014" as his election year, and he is not running in 2014. At oral argument, Platt essentially responded: "Once a judicial candidate under the Code, always a judicial candidate under the Code." The State largely agreed. To resolve mootness on this view, we would have to determine whether Platt's still-existing Campaign Committee makes him a "judicial candidate" when he is not actually running in 2014—an unbriefed and unanswered question of state law.

There is an easier way to resolve the mootness issue: Regardless of whether Platt remains a "candidate" under the Code, his claims are "capable of repetition, yet evading review." *See Sosna v. Iowa*, 419 U.S. 393, 399–400 (1975); *Carey*, 614 F.3d at 197. This doctrine applies when (1) the challenged action necessarily evades review, and (2) there is "a reasonable expectation" that the same plaintiff will have the same complaint again. *Weinstein v. Bradford*,

423 U.S. 147, 149 (1975). Challenges to election laws "quintessential[ly]" evade review because "the remedy sought is rendered impossible by the occurrence of the relevant election." *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) (case not moot even though the "occurrence of the 2004 election made it impossible for the courts to grant the preliminary injunctive relief Plaintiffs sought"); *see also Carey*, 614 F.3d at 197. And challenges by a former candidate are typically capable of repetition because the plaintiff "retains the right to run for judicial office again." *Carey*, 614 F.3d at 197; *see also Lawrence*, 430 F.3d at 371; *Green Party of Tennessee v. Hargett*, ___F.3d___, No. 13-5975, 2014 WL 4116483, at *7 n.1 (6th Cir. Aug. 22, 2014).

Under this framework, Platt's claims may proceed. Even if he is no longer a "judicial candidate," Platt plans to run again, making this case capable of repetition. *See Carey*, 614 F.3d at 197. And his claims evade review because of the short-term nature of each election. *See Lawrence*, 430 F.3d at 371. Platt's challenge is thus "capable of repetition, yet evading review" and is saved from any mootness concerns.

With the standing, ripeness, and mootness doctrines satisfied, this case falls within Article III's limits. We may now address whether the district court abused its discretion in denying Platt's request for a preliminary injunction.

### III.

Platt seeks to preliminarily enjoin certain provisions of the Ohio Code of Judicial Conduct until a full hearing on the merits can occur. If we agree with Platt, we would necessarily disrupt the state-law status quo before each side has had full opportunity to make its case before the district court. That is why preliminary injunctions are "extraordinary and drastic remed[ies] . . . never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). And that is why the plaintiff bears the burden to justify relief, even in First Amendment cases. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). To do so, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**A.**

Once a district court balances those four factors, appellate courts have "always applied the abuse of discretion standard on review of a preliminary injunction"—even in the First Amendment context. *Ashcroft v. ACLU*, 542 U.S. 656, 664, 666 (2004). The Supreme Court, for example, has applied abuse-of-discretion review to preliminary injunctions enjoining enforcement of the Child Online Protection Act on First Amendment grounds, *id.* at 665–66, and enjoining enforcement of a town's prohibition on topless dancing on First Amendment grounds, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975).

In our Circuit's preliminary-injunction cases on the First Amendment, however, we have occasionally applied *de novo* review across the board. *See, e.g.*, *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp. (SMART)*, 698 F.3d 885, 889–90 (6th Cir. 2012) ("[I]n cases with First Amendment implications, the standard of review [for preliminary injunctions] is *de novo*."); *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012) (same). *But see, e.g.*, *McNeilly*, 684 F.3d at 615, 622 (applying abuse-of-discretion review to a First Amendment case at the preliminary-injunction stage); *Ohio Council 8 Am. Fed'n of State, Cnty. & Mun. Employees, AFL-CIO v. Brunner*, 462 F. App'x 557, 559 (6th Cir. 2012) (per curiam) (same). Our occasional resort to *de novo* review makes some sense: Because a plurality of the Supreme Court said that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality), we have said that "the factors for granting a preliminary injunction essentially collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights." *Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002). We have sometimes concluded, therefore, that all four factors are "essentially encompassed by the analysis of the movant's likelihood of success on the merits, which is a question of law that must be reviewed *de novo*." *SMART*, 698 F.3d at 890.

Yet, lest we forget, our authority at this point in the litigation is limited. Before us is a *preliminary* injunction—here on interlocutory appeal—that preserves the state-law status quo. This is the kind of relief that the Supreme Court has characterized as "extraordinary" and "drastic." *Munaf*, 553 U.S. at 690. To determine whether it should grant relief, the district court

balances four factors—not one—even in First Amendment cases. *See, e.g.*, *Doran*, 422 U.S. at 931 (separately balancing "irreparable injury" in a First Amendment case).

Keeping these limits in mind, our cases can be reconciled. We "review the District Court's legal rulings *de novo*" (including its First Amendment conclusion), "and its ultimate conclusion [as to whether to grant the preliminary injunction] for abuse of discretion." *McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 867 (2005). That is the same standard we recently stated and applied in a unanimous en banc decision. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) ("Whether the movant is likely to succeed on the merits is a question of law we review *de novo*[,] [but] [w]e review for abuse of discretion . . . the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief."). And we have already applied that standard in the First Amendment context, crediting *Schimmel*. *See Mich. Catholic Conference & Catholic Family Servs. v. Burwell*, 755 F.3d 372, 382, 398 (6th Cir. 2014). All this is to say: when we look at likelihood of success on the merits, we independently apply the Constitution, but we still defer to the district court's overall balancing of the four preliminary-injunction factors.

**B.**

Independently applying the First and Fourteenth Amendments, we are not persuaded that the district court erred in its success-on-the-merits determination. Ohio has compelling state interests, *Carey*, 614 F.3d at 194, 201; it narrowed its Code to comport with *Carey*; and the majority of federal courts have held the same or similar provisions constitutional. *E.g.*, *Ohio Council 8 Am. Fed'n of State, Cnty., & Mun. Employees, AFL-CIO v. Brunner*, 912 F. Supp. 2d 556, 569 (S.D. Ohio 2012); *compare, e.g.*, *Wersal v. Sexton*, 674 F.3d 1010, 1024 (8th Cir. 2012) (en banc) (upholding Minnesota's similar restrictions), *and Siefert v. Alexander*, 608 F.3d 974, 990 (7th Cir. 2010) (same for Wisconsin's Code), *with Weaver v. Bonner*, 309 F.3d 1312, 1320 (11th Cir. 2002) (holding unconstitutional a similar provision in the Georgia Code).

Nor did the district court err regarding the other factors. Platt has not shown irreparable harm, largely because he has not demonstrated a strong likelihood of success on the merits. *See Mich. Catholic Conference*, 755 F.3d at 398; *McNeilly*, 684 F.3d at 615. And the district court

did not abuse its discretion in weighing the equities and potential harm to the public. Additionally, with Platt no longer actually running for office in 2014, the need for "expediency" has largely ceased, and "the public interest would be best served by [a merits] proceeding and not by enjoining Ohio from enforcing a state election statute before an upcoming election." *Ohio Council 8*, 462 Fed. App'x at 559; *cf. Serv. Emps. Int'l Union Local 1 v. Husted*, 698 F.3d 341, 345 (6th Cir. 2012). The district court did not abuse its discretion in denying the preliminary injunction.

## IV.

Our opinion does not guarantee the State a win on the merits. Far from it: We, like the Supreme Court, do not "intimate [a] view" on the merits one way or the other. *Doran*, 422 U.S. at 934. The ultimate issue—whether Ohio's narrower Code provisions satisfy the First Amendment principles discussed in *Carey*—remains an open question, one in which the Supreme Court may soon provide guidance. *See Florida Bar v. Williams-Yulee*, 138 So.3d 379 (Fla. 2014), *cert. granted*, ___ S. Ct. ___, 2014 WL 2763710 (Oct. 2, 2014) (granting certiorari on "[w]hether a rule of judicial conduct that prohibits candidates for judicial office from personally soliciting campaign funds violates the First Amendment"). But now is not the time for us to answer that question. Here, we conclude only that, upon *de novo* review, Platt has not established a "strong likelihood of success on the merits," *Schimmel*, 751 F.3d at 430, and that the district court did not abuse its discretion in balancing the four preliminary-injunction factors. At this stage, that "is the extent of our appellate inquiry." *Doran*, 422 U.S. at 934. The district court's denial of the preliminary injunction stands, and the parties and district court may now undertake further proceedings on the ultimate merits.

For these reasons, we AFFIRM.