RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0232p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

COLLEEN M. O'TOOLE,

*Plaintiff,*

FRIENDS TO ELECT COLLEEN M. O'TOOLE,

*Plaintiff-Appellant,*

*v.*

MAUREEN O'CONNOR; SCOTT J. DREXEL; RICHARD A. DOVE,

*Defendants-Appellees.*

No. 15-3614

_____

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:15-cv-01446—James L. Graham, District Judge.

Argued: August 5, 2015

Decided and Filed: September 21, 2015

Before: BOGGS, CLAY, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Curt C. Hartman, THE LAW FIRM OF CURT C. HARTMAN, Cincinnati, OH, for Appellant. Drew H. Campbell, BRICKER & ECKLER LLP, Columbus, Ohio, for Appellees. **ON BRIEF:** Curt C. Hartman, THE LAW FIRM OF CURT C. HARTMAN, Cincinnati, OH, for Appellant. Drew H. Campbell, Maria J. Armstrong, S. Courter Shimeall, BRICKER & ECKLER LLP, Columbus, Ohio, for Appellees.

1

---

**OPINION**

---

CLAY, Circuit Judge.   Plaintiff, Friends to Elect Colleen M. O'Toole (Colleen M. O'Toole's judicial campaign committee), appeals from the June 3, 2015 opinion and order of the district court denying its motion for a preliminary injunction to enjoin enforcement of Rule 4.4(E) of the Ohio Code of Judicial Conduct.   Rule 4.4(E) imposes a temporal restriction on a judicial campaign committee's solicitation and receipt of campaign contributions.   Plaintiff alleges that the rule violates campaign committees' First Amendment free speech rights and the Equal Protection Clause of the Fourteenth Amendment.

For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

**I.      Procedural Background**

On April 26, 2015, Plaintiffs, Colleen M. O'Toole and Friends to Elect Colleen M. O'Toole (hereinafter collectively, "Plaintiffs"), filed a complaint challenging the constitutionality of a number of provisions of the Ohio Code of Judicial Conduct, including Rule 4.4(E).   The complaint named as defendants Maureen O'Connor, Chief Justice of the Ohio Supreme Court, Richard Dove, Director of the Ohio Supreme Court's Board of Professional Conduct, and Scott Drexel, Disciplinary Counsel of the Ohio Supreme Court (hereinafter collectively, "Defendants").   On the same day, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction only with respect to Rule 4.4(E).   The district court held a hearing and ultimately denied the motion on June 3, 2015.   Plaintiff Friends to Elect Colleen M. O'Toole filed a notice of appeal the following day, and on June 25, 2015, this Court expedited the appeal.   Plaintiff Colleen M. O'Toole neither joined the June 4, 2015 notice of appeal nor filed a separate notice of appeal, and is therefore not a party to the current appeal. Because Friends to Elect Colleen M. O'Toole is the only party to this appeal, we will refer to Friends to Elect Colleen M. O'Toole as "Plaintiff" throughout this opinion.

## II.      Factual Background

Colleen M. O'Toole currently serves as a judge on Ohio's Eleventh District Court of Appeals.  She has publicly announced her intention to run for election in 2016 to one of the three contested seats on the Supreme Court of Ohio and intends to seek the Republican Party's nomination at the primary election, which will be held in March of 2016.  To this end, Judge O'Toole must file a declaration of candidacy and petition no later than 90 days before the primary.  Ohio Rev. Code § 3513.05.  Friends to Elect Colleen M. O'Toole was established and registered as a campaign committee to support Judge O'Toole's campaign efforts.  Plaintiffs brought the present lawsuit to challenge certain regulations relating to judicial elections, including those that place limits on judicial candidates' and judicial campaign committees' solicitation and receipt of campaign contributions.

Under the Ohio Constitution, state judges, including justices of the Supreme Court of Ohio, are elected.  Ohio Const. art. IV, § 6(A)(1)–(3).  Pursuant to its constitutional authority to regulate the practice of law in Ohio, the Supreme Court of Ohio promulgated the Ohio Code of Judicial Conduct ("the Code"), which "establishes standards for the ethical conduct of judges and judicial candidates."  Ohio Jud. Cond. R., Preamble ¶ 3; Ohio Const. art. IV, §§ 2(B)(1)(g), 5(B).  The Code aims to ensure "[a]n independent, fair, and impartial judiciary[,]" and declares that "[i]nherent in all the rules contained in [the] code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system."  Ohio Jud. Cond. R., Preamble ¶ 1.

In order to ensure that judicial elections occur in a manner that is consistent with the state's overarching goals, the Code includes a number of provisions regulating certain aspects of judicial elections.  Included among them is Rule 4.4(A), which prohibits candidates from personally soliciting campaign contributions while permitting candidates to "establish a campaign committee to manage and conduct a campaign for the candidate, subject to the provisions of [the] Code."  Rule 4.4(E), the rule at issue in this appeal, is one of the regulations governing the behavior of campaign committees.  The rule restricts the timing of a judicial campaign committee's solicitation and receipt of campaign contributions.  Rule 4.4(E) states, in relevant part:

The campaign committee of a judicial candidate may begin soliciting and receiving contributions no earlier than one hundred twenty days before the first Tuesday after the first Monday in May of the year in which the general election is held. If the general election is held in 2012 or any fourth year thereafter, the campaign committee of a judicial candidate may begin soliciting and receiving contributions no earlier than one hundred twenty days before the first Tuesday after the first Monday in March of the year in which the general election is held.

Ohio Jud. Cond. R. 4.4(E). Other provisions of the Code permit campaign committees to continue soliciting and receiving contributions until 120 days after the earlier of: (1) the general election; (2) defeat; or (3) death or withdrawal of the candidate. Ohio Jud. Cond. R. 4.4(E)–(G). Additionally, a candidate may begin contributing her personal money to her campaign 210 days before the primary election. Ohio Jud. Cond. R. 4.4(H)(1).

## DISCUSSION

### I. Standard of Review

A district court's denial of a motion for a preliminary injunction is typically reviewed for abuse of discretion. *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012). However, where the preliminary injunction at issue implicates the First Amendment, we have "occasionally applied *de novo* review across the board." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 769 F.3d 447, 453 (6th Cir. 2014). We recently reconciled these seemingly conflicting standards of review, explaining that we "review the District Court's legal rulings *de novo* (including its First Amendment conclusion), and its ultimate conclusion as to whether to grant the preliminary injunction for abuse of discretion." *Id.* at 454 (internal quotation marks omitted); *see also City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) ("Whether the movant is likely to succeed on the merits is a question of law we review *de novo*[,] [but we] review for abuse of discretion . . . the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief." (internal citation and quotation marks omitted)).

### II. Analysis

In a case involving a similar challenge to Ohio's Code of Judicial Conduct, we explained that "preliminary injunctions are extraordinary and drastic remedies never awarded as of right.

And that is why the plaintiff bears the burden to justify relief, even in First Amendment cases." *Platt*, 769 F.3d at 453 (internal citation and quotation marks omitted). A party seeking such relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

Plaintiff challenges Rule 4.4(E) as violating both the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. In particular, Plaintiff argues that Rule 4.4(E) violates the First Amendment by unconstitutionally restricting campaign committees' core political speech. Plaintiff further argues that the rule violates the Fourteenth Amendment's Equal Protection Clause by disadvantaging campaign committees with "little to no" retained funds, and by treating judicial campaign committees differently than other political organizations. Plaintiff has failed to demonstrate a likelihood of success on the merits of either its First Amendment or Equal Protections claims.

## A.      Likelihood of Success on First Amendment Grounds

Under this Circuit's precedent, "[w]here a plaintiff makes a facial challenge under the First Amendment to a statute's constitutionality, the facial challenge is an overbreadth challenge." *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (internal quotation marks omitted); *see also City of Houston v. Hill*, 482 U.S. 451, 458 (1987) ("Only a statute that is substantially overbroad may be invalidated on its face."). To prevail, a plaintiff "must show substantial overbreadth: that the statute prohibits 'a substantial amount of protected speech both in an absolute sense and relative to [the statute's] plainly legitimate sweep[.]'" *Speet*, 726 F.3d at 872 (quoting *Carey v. Wolnitzek*, 614 F.3d 189, 208 (6th Cir. 2010)).

As a preliminary matter, the parties disagree regarding the appropriate level of scrutiny to apply in considering the constitutionality of the challenged restriction. Relying on *Buckley v. Valeo*, 424 U.S. 1 (1976), the district court reasoned that Rule 4.4(E)'s restriction on receiving contributions limited campaign committees' associational freedoms, whereas Rule 4.4(E)'s

restriction on the solicitation of contributions limited campaign committee's freedom of speech. Noting that laws that limit associational freedoms are typically analyzed under a lower level of scrutiny than those that limit freedom of speech, the district court applied the lower *Buckley* standard in analyzing Rule 4.4(E)'s limitation on the receipt of campaign contributions while applying strict scrutiny to the rule's limitation on the solicitation of campaign contributions. Plaintiff argues that the district court erred in bifurcating its analysis and contends that the entire regulation should have been analyzed under strict scrutiny. Because Plaintiff fails to demonstrate a likelihood of success on the merits even when strict scrutiny is applied to the regulation as a whole, encompassing both solicitation and receipt of campaign contributions, we need not decide this issue.

In order to satisfy strict scrutiny, a regulation must be "narrowly tailored to serve a compelling interest." *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1664 (2015). According to Defendants, the interest served by Rule 4.4(E) is the State's interest in "judicial impartiality, judicial independence [and] judicial integrity." (R. 12, Response to Motion for Preliminary Injunction, Page ID # 162.) As the Supreme Court recently acknowledged in *Williams-Yulee*, the legitimacy of this interest has long been recognized by the Court and can be tracked as far back as the Magna Carta. 135 S. Ct. at 1666 (emphasizing the "vital" nature of a state's interest in "safeguarding public confidence in the fairness and integrity of the nation's elected judges" (internal quotation marks omitted)).

Plaintiff contends that Defendants' stated interest applies only to the direct solicitation of contributions by a judge herself, and not to solicitation or receipt of contributions by a judicial campaign committee. This argument is unavailing, and despite Plaintiff's assertions, *Williams-Yulee* simply does not stand for this proposition. While the concerns raised by a judicial campaign committee's solicitation may be more attenuated than those raised by direct candidate solicitation, the close connection between judicial candidates and their campaign committees under Ohio law implicates many of the same concerns regarding judicial integrity and propriety. Judicial campaign committees in Ohio derive their authority from the candidate and, in fact, may include the candidate herself. *See* Ohio Rev. Code § 3517.01(C)(1) (defining "campaign committee" as "a candidate or a combination of two or more persons authorized by a candidate

. . . to receive contributions and make expenditures"); Ohio Jud. Cond. R. 4.4(A) ("A judicial candidate may establish a campaign committee to manage and conduct a campaign for the candidate . . . ."). Moreover, in addition to the actual or apparent authority judicial candidates wield over their campaign committees, Ohio law requires that "[t]he name of a campaign committee shall include at least the last name of the campaign committee's candidate," further aligning the committee with the candidate in the eyes of the public. Ohio Rev. Code § 3517.10(D)(1); *see also Platt*, 769 F.3d at 454 (recognizing Ohio's compelling state interests in enforcing Rule 4.4(E) in holding that an "as applied" challenge to the rule did not show a likelihood of success).

Plaintiff claims that Defendants failed to present sufficient evidence to establish that the challenged regulation actually advances Defendants' stated interest. Appellant's Br. at 21. The district court correctly dismissed this argument, citing to the *Williams-Yulee* Court's on-point explanation that "[t]he concept of public confidence in judicial integrity does not easily reduce to precise definition, nor does it lend itself to proof by documentary record." 135 S. Ct. at 1667. The interest at issue in this case is well-established, was previously recognized by this Circuit with respect to Rule 4.4(E), and was recently reiterated by the Supreme Court. *See Platt*, 769 F.3d at 454; *Williams-Yulee*, 135 S. Ct. at 1666. The district court therefore did not err in concluding that this interest is compelling.

Plaintiff further contends that Rule 4.4(E) does not represent the least restrictive means of achieving Defendants' stated interest. However, "[t]he First Amendment requires that [a judicial election regulation] be narrowly tailored, not that it be perfectly tailored." *Williams-Yulee*, 135 S. Ct. at 1671 (internal quotation marks omitted). As the Supreme Court explained, "[t]he impossibility of perfect tailoring is especially apparent when the State's compelling interest is as intangible as public confidence in the integrity of the judiciary." *Id*.

The *Williams-Yulee* Court found in that case that Florida's ban on all campaign contribution solicitation by judges restricted only "a narrow slice of speech." *Id.* at 1670. The regulation at issue in this case restricts an even narrower slice of speech, allowing a judicial campaign sixteen months in which to receive and solicit contributions. This regulation also leaves candidates "able to contribute and spend their own funds, marshal volunteers and

supporters and engage in campaign activities other than soliciting funds, such as attending political functions, marching in parades and making speeches about their candidacy." (R. 15, Opinion and Order, Page ID # 441 (internal quotation marks omitted).) Rule 4.4(E) is focused exclusively on the solicitation and receipt of money—the activities most likely to harm public confidence in the judiciary. Additionally, the regulation prohibits the solicitation and receipt of funds only during the period of time that most implicates the government's stated interests, recognizing that contributions that are not proximate in time to an election can increase the appearance of impropriety and the risk of actual bias.

While the specific time limit of 120 days (rather than, for example, 130 or 110 days) may appear arbitrary, it is exactly this type of line-drawing that the Supreme Court sought to avoid "wad[ing] into" in explaining that narrow tailoring does not mean "perfect" tailoring. *See Williams-Yulee*, 135 S. Ct. at 1671. "[M]ost problems arise in greater and lesser gradations, and the First Amendment does not confine a State to addressing evils in their most acute form." *Id.*; *see also Wagner v. Fed. Election Comm'n*, No. 13-5162, 2015 WL 4079575, at *26 (D.C. Cir. July 7, 2015) ("We do not discount the possibility that Congress could have narrowed its aim even further, targeting only certain specific kinds of [behavior] or doing so only during specific periods. But as the Court has made clear, 'most problems arise in greater and lesser gradations, and the First Amendment does not confine a State to addressing evils in their most acute form.'" (quoting *Williams-Yulee*, 135 S. Ct. at 1671)).

Plaintiff has not shown that "a substantial number of [Rule 4.4(E)'s] applications are unconstitutional," and that Rule 4.4(E) is therefore overbroad. *Carey*, 614 F.3d at 201. Accordingly, Plaintiff has failed to demonstrate a likelihood of success on the merits with respect to its First Amendment claim, and the district court did not err in so concluding.

## B.    Likelihood of Success on Equal Protection Grounds

In addition to its First Amendment challenge, Plaintiff raises an unpersuasive argument that Rule 4.4(E) violates the Equal Protection Clause of the Fourteenth Amendment in two ways. First, Plaintiff claims that Rule 4.4(E) disadvantages those judicial campaign committees with "little to no" retained funds. Second, Plaintiff argues that Rule 4.4(E) impermissibly treats

judicial campaign committees differently than political action committees and other political organizations that are not subject to comparable restrictions.

With respect to the first argument, Plaintiff contends that Rule 4.4(E) puts campaign committees with few retained funds at a disadvantage relative to campaign committees with significant retained funds. The disadvantage purportedly arises because campaign committees with greater retained funds have more money to spend in the period of time during which Rule 4.4(E) forbids campaign committees to solicit or receive contributions. While Rule 4.4(E) may have a differential effect on candidates who have not previously sought judicial office because such candidates could not have retained any funds in a prior election cycle to spend in a subsequent cycle, the rule is not the cause of the disparity that concerns Plaintiff. Plaintiff's candidate and her competitors are all sitting judges who have previously stood for election. Because the complained-of differential effect arises not from any lack of equality in the rule itself, but rather from how different candidates have acquired, used, and husbanded their resources in previous campaigns,[1] we agree with the district court that Plaintiff failed to demonstrate a likelihood of success as to its first Equal Protection argument.

As for Plaintiff's second Equal Protection argument, Plaintiff explicitly seeks to invoke the line of Equal Protection cases related to the infringement of fundamental rights, namely the right to free speech. "A statute challenged on equal protection grounds will be subject to strict scrutiny when the statute . . . has an impact on a 'fundamental' right." *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F.3d 397, 410 (6th Cir. 1999). Applying strict scrutiny, we have already considered and rejected the substance of Plaintiff's First Amendment argument, concluding that Plaintiff failed to show a likelihood of success. Moreover, the compelling interest underlying Rule 4.4(E) specifically relates to the unique nature of judicial elections and the importance of maintaining the integrity and impartiality of the judiciary—interests that are different from those implicated by political campaigns. *See Williams-Yulee*, 135 S. Ct. at 1667 ("States may regulate judicial elections differently than they regulate political elections, because the role of judges differs from the role of politicians."). Based upon the Supreme Court's enunciation of the distinction between

---

[1]Notably, Plaintiff does not allege any harm caused by Rule 4.4's sliding contribution limits. *See, e.g.*, Ohio Jud. Cond. R. 4.4(I)(1).

judicial campaigns and non-judicial political campaigns, Plaintiff has failed to demonstrate a likelihood of success on the merits of its Equal Protection claim.

### C.      Weighing the Preliminary Injunction Factors

Having concluded that the district court did not err in determining that Plaintiff failed to demonstrate a likelihood of success on the merits, we review the district court's ultimate denial of a preliminary injunction for abuse of discretion. *See Schimmel*, 751 F.3d at 430 ("Whether the movant is likely to succeed on the merits is a question of law we review de novo[,] [but we] review for abuse of discretion . . . the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief."). While "the 'likelihood of success' prong is the most important," it is only one of the factors to be considered by a court deciding whether or not to grant a preliminary injunction. *Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009). Courts also consider "whether the movant would suffer irreparable injury without the injunction; [] whether issuance of the injunction would cause substantial harm to others; and [] whether the public interest would be served by issuance of the injunction." *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003), *abrogated on other grounds by KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004).

The district court found that Plaintiff failed to establish a likelihood of irreparable injury absent an injunction, given "[P]laintiffs' failure to demonstrate a strong likelihood of success on the merits." (R.15, Opinion and Order, Page ID # 443.) *See also Platt*, 769 F.3d at 455 ("[Plaintiff] has not shown irreparable harm, largely because he has not demonstrated a strong likelihood of success on the merits."). Considering the remaining factors, the district court concluded that "[t]he issuance of an injunction would upset the fundraising system Ohio has implemented for judicial elections and would risk eroding public confidence in the independence of the judiciary." (R.15, Opinion and Order, Page ID # 443.) We find that the district court did not abuse its discretion in so concluding.

**CONCLUSION**

The district court did not err in concluding that Plaintiff failed to demonstrate a likelihood of success on the merits of its claim. Likewise, the district court did not abuse its discretion in weighing the other preliminary injunction factors and deciding not to grant Plaintiff's motion for a preliminary injunction.

For the foregoing reasons, we **AFFIRM** the decision of the district court.