JANET T. NEFF, United States District Judge
Now pending before the Court is Defendant Secretary of State Ruth Johnson's Motion to Dismiss Based on Standing (ECF No. 70), to which Plaintiff Joel *806 Crookston filed a response in opposition (ECF No. 72), and Defendant filed a reply (ECF No. 73). Having considered the parties' submissions, the Court concludes that oral argument is not necessary to resolve the issues presented. See W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court denies Defendant's motion.
I. BACKGROUND
Plaintiff is a lifelong resident of Michigan (Verified Compl. ¶ 9, ECF No. 1). He first registered to vote in 2002, has voted in most primary and general elections since then, and is a qualified elector under Michigan law (id. ). Defendant Ruth Johnson is the Secretary of State of the State of Michigan (id. ¶ 10). Secretary Johnson has the duty to "[a]dvise and direct local election officials as to the proper methods of conducting elections." MICH. COMP. LAWS § 168.31(b). Further, Secretary Johnson has the power to investigate and refer violations of the challenged provisions for prosecution. MICH. COMP. LAWS § 168.31(h).
Plaintiff owns and usually carries a cell phone that can capture digital photographs and video and upload such files to social media accounts (Verified Compl. ¶ 11). On November 6, 2012, Plaintiff responded to a prompt on social media to write-in vote for an acquaintance from college for an office in the Michigan general election (id. ¶ 1). After voting, Plaintiff not only disclosed his vote but also provided a photograph of part of his marked ballot, i.e., a "ballot selfie," which he took with his cell phone within a voting station inside a polling place (id. ; ECF No. 13 at PageID.41-42).
On September 9, 2016, Plaintiff filed a three-count Verified Complaint for Declaratory and Injunctive Relief, alleging the following counts:
I. MICH. COMP. LAWS § 168.579 and § 168.738(2) Violate the First Amendment
II. The Secretary of State's Instruction and Order Regarding Photography in Polling Places ("Secretary's Rule 1") Violates the First and Fourteenth Amendments
III. The Secretary of State's Instruction and Order Regarding the Use of Cell Phones in Voting Stations ("Secretary's Rule 2") Violates the First Amendment
(ECF No. 1). According to Plaintiff, his lawsuit endeavors to respect the integrity of the voting process, including ballot secrecy, "while calling upon this Court to recognize that circumstances today-namely, the advancement of technology and the advent of new outlets for political speech through social media on the Internet-require existing law to be more reasonably tailored" (ECF No. 13 at PageID.42).
On September 23, 2016, Plaintiff moved for a preliminary injunction (ECF No. 12), requesting this Court enter an order enjoining Secretary Johnson from "enforcing MICH. COMP. LAWS §§ 168.579, 168.738(2) against the photographing of one's own ballot and display of such photographs outside of polling places" and to "enjoin enforcement of orders identified as Secretary's Rule 1 and Secretary's Rule 2" (id. at PageID.38). On October 24, 2016, before the 2016 presidential election, this Court issued the Preliminary Injunction (ECF No. 19). Secretary Johnson filed an interlocutory appeal, and the Sixth Circuit Court of Appeals reversed the Preliminary Injunction, reasoning, in pertinent part, that Plaintiff's "belated challenge to Michigan's election procedures prejudices the State's interest in holding orderly elections" (ECF No. 30; ECF No. 26 at PageID.320). [1]
*807 Plaintiff subsequently moved to amend his Complaint to add a new Count IV: " MICH. COMP. LAWS §§ 168.579, 168.738(2), Secretary's Instruction 1 and Secretary's Instruction 2 Violate the Fourteenth Amendment" (ECF No. 50). Following a motion hearing on October 11, 2017, this Court granted Plaintiff leave to amend his Complaint to add the due process claim (Order, ECF No. 64). This Court's Order also set forth a briefing schedule on Defendant's proposed motion to dismiss Count IV, limited to the issue of standing (id. ), a motion that has since been fully briefed (ECF Nos. 70-73).
II. ANALYSIS
A. Motion Standard
Secretary Johnson brings her motion under Federal Rule of Civil Procedure 12(b)(1) (ECF No. 71 at PageID.725). Whether a party has Article III standing is properly an issue of a court's subject matter jurisdiction under Rule 12(b)(1). See Lyshe v. Levy , 854 F.3d 855, 857 (6th Cir. 2017) ; Kepley v. Lanz , 715 F.3d 969, 972 (6th Cir. 2013) ; Roberts v. Hamer , 655 F.3d 578, 580-81 (6th Cir. 2011). Article III of the Federal Constitution extends the federal judicial power to only a limited set of "cases" and "controversies." U.S. CONST. art. III, § 2. Plaintiffs "who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons , 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). The doctrine of standing is one of several doctrines that reflect this fundamental limitation. Summers v. Earth Island Inst. , 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009). The doctrine requires federal courts to satisfy themselves that a plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." Baker v. Carr , 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).
Specifically, the United States Supreme Court has held that "the irreducible constitutional minimum of standing contains three elements." Lujan v. Defs. of Wildlife , 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The plaintiff must have suffered "[1] an injury in fact, [2] fairly traceable to the defendant's conduct, [3] that is likely to be redressed by a favorable decision from the court." Fair Elections Ohio v. Husted , 770 F.3d 456, 459 (6th Cir. 2014). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan , 504 U.S. at 561, 112 S.Ct. 2130. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " Id. (quoting Lujan v. Nat'l Wildlife Fed'n , 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ). See also Nichols v. Muskingum Coll. , 318 F.3d 674, 677 (6th Cir. 2003) ("[W]here a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter *808 jurisdiction, the trial court takes the allegations in the complaint as true.").
In reviewing a 12(b)(1) motion, a court may also consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction. See Nichols, supra; Ohio Nat. Life Ins. Co. v. United States , 922 F.2d 320, 325 (6th Cir. 1990) ; Rogers v. Stratton Industries , 798 F.2d 913, 916-18 (6th Cir. 1986). When a factual controversy is raised, "the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co. , 491 F.3d 320, 330 (6th Cir. 2007).
B. Discussion
Secretary Johnson argues that Plaintiff lacks standing to pursue Count IV. In Count IV, Plaintiff alleges that MICH. COMP. LAWS §§ 168.579, 168.738(2), and Secretary's Instructions 1 and 2 violate the due process clause of the Fourteenth Amendment because " MICH. COMP. LAWS §§ 168.579, 168.738(2) provide no opportunity to be heard before depriving Michigan voters, including Crookston, of the right to vote" and "[e]nforcement of the Secretary's Instructions 1 and 2 threaten to deprive Michigan voters, including Crookston, of the right to vote without any opportunity to be heard" (First Am. Compl. ¶¶ 45-47, ECF No. 65 at PageID.695).
Section 579 of the Michigan Election Code governs voting in a primary election and provides in pertinent part that "[i]f an elector, after marking his or her ballot, exposes it to any person in a manner likely to reveal the name of any candidate for whom the elector voted, the board of election inspectors shall reject the ballot and the elector shall forfeit the right to vote at the primary." MICH. COMP. LAWS § 168.579. Section 738 of the Michigan Election Code, which governs all elections, similarly provides in pertinent part that
If an elector shows his or her ballot or any part of the ballot to any person other than a person lawfully assisting him or her in the preparation of the ballot or a minor child accompanying that elector in the booth or voting compartment under section 736a, after the ballot has been marked, to disclose any part of the face of the ballot, the ballot shall not be deposited in the ballot box, but shall be marked "rejected for exposure", and shall be disposed of as are other rejected ballots. If an elector exposes his or her ballot, a note of the occurrence shall be entered on the poll list opposite his or her name and the elector shall not be allowed to vote at the election.
MICH. COMP. LAWS § 168.738(2). Moreover, Michigan law provides that "[a]ny person who shall be found guilty of a misdemeanor under the provisions of this act shall, unless herein otherwise provided, be punished by a fine of [sic] not exceeding $ 500.00, or by imprisonment in the county jail for a term not exceeding 90 days, or both such fine and imprisonment in the discretion of the court." MICH. COMP. LAWS § 168.934.
Secretary's Rule 1, which applies to polling places in all elections, provides the following:
Persons shall not use video cameras, cell phone cameras or video recording, cameras, television or recording equipment in the polling place, except that broadcast stations and credentialed media may be permitted to briefly film from [sic] public area. Personnel working for broadcast stations or media shall not set up cameras in the polling place....
*809 Actionable Election Day Offenses and Duty to Act Under State and Federal Statutes, Michigan Secretary of State, Oct. 24, 2014, at 2.[2] Secretary's Rule 2 further provides that "[p]ersons shall not use cell phones once they have entered voting station. Cell phones may be used in the polling place by voters (while waiting in line), challengers and pollwatchers as long as they are not disruptive to the voting process." Id.
Secretary Johnson argues that Plaintiff does not have standing to bring his due-process claim in Count IV because he has not alleged an injury-in-fact based on enforcement of the challenged anti-exposure laws, and any loss of his vote on that basis is highly speculative, given the history of non-enforcement, Plaintiff's own intention not to display a marked ballot in the future, and no evidence that poll workers are systematically mis-enforcing the law (ECF No. 71 at PageID.718-722). Secretary Johnson argues that Plaintiff has similarly failed to allege an injury-in-fact based on enforcement of the Instructions because he has never been subject to enforcement based on violating the Instructions, and in any event, the penalty for violating the challenged photography prohibition is not loss of the right to vote (id. at PageID.722-725).
In response, Plaintiff argues that he and any other qualified Michigan voter need not be disenfranchised before seeking vindication of the activity of taking a ballot photograph while voting (ECF No. 72 at PageID.726). Plaintiff argues that his right to vote is a legally protected interest that is concrete and particularized under the Michigan Constitution and law (id. at PageID.729-730). Plaintiff argues that the current procedure in place for rejecting his ballot should he engage in ballot photography does not adequately protect his procedural due process right: "it provides no procedure whatsoever outside of a judgment call by poll workers in consultation with the Defendant" (id. at PageID.730). Plaintiff argues that his injury is "actual or imminent" in that poll workers can see voters taking a ballot photograph while voting and that he must choose, every time an election approaches, "between engaging in constitutionally protected speech and being subject to disenfranchisement" (id. at PageID.731). Plaintiff concludes that Secretary Johnson "may not be empowered with forfeiting a voter's right to vote in a haphazard fashion in the name of protecting voting rights" (id. at PageID.732 [emphasis in original] ).
In reply, Secretary Johnson argues that Plaintiff's mere "intent" to take a photograph does not satisfy the injury-in-fact requirement (ECF No. 73 at PageID.756). Secretary Johnson again emphasizes that Plaintiff has no actual injury, nor is there a "substantial risk of forfeiture" (id. at PageID.756-757).
Plaintiff's argument has merit.
Again, standing is comprised of the following three elements: (1) an injury-in-fact; (2) a causal connection between the injury and the complained-of conduct; and (3) the injury can be redressed by a favorable ruling. Lujan , 504 U.S. at 560-61, 112 S.Ct. 2130. The parties did not address the causation and redressability elements in their motion papers, focusing instead on the first element, an injury-in-fact (ECF No. 72 at PageID.728-729; ECF No. 73 at PageID.756). Injury in fact is defined by the Supreme Court as "the invasion of a legally protected interest, which is (a) concrete *810 and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan at 560, 112 S.Ct. 2130.
Plaintiff identifies his "legally protected interest" as his "right to procedural due process under the Fourteenth Amendment before forfeiting his right to vote" (ECF No. 72 at PageID.729-730). Where, as here, a plaintiff seeks to establish standing based on an "imminent" injury, the Supreme Court has further explained "that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." Clapper v. Amnesty Int'l USA , 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) (citation omitted).
In Babbitt v. United Farm Workers Nat'l Union , 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), the Supreme Court held that a plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Id. at 298, 99 S.Ct. 2301. The Court held that "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.' " Id. at 302, 99 S.Ct. 2301 (citation omitted). On the facts before it, which concerned the constitutionality of an Arizona statute that the defendants maintained had not yet been applied and "may never be applied," the Court observed that "the consumer publicity provision on its face proscribes dishonest, untruthful, and deceptive publicity, and the criminal penalty provision applies in terms to '[a]ny person ... who violates any provision' of the Act." Id. The Court opined that the plaintiffs were "not without some reason in fearing prosecution for violation of the ban" where Arizona had "not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices." Id. The Court concluded that "the positions of the parties are sufficiently adverse with respect to the consumer publicity provision proscribing misrepresentations to present a case or controversy within the jurisdiction of the District Court." Id.
In Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct. , 769 F.3d 447, 452 (6th Cir. 2014), relying on Babbitt , the Sixth Circuit held that although the plaintiff-prospective judicial candidate failed to file petitions required to appear on the ballot, the plaintiff nonetheless alleged a credible fear that provisions of Ohio's Code of Judicial Conduct prohibiting him from openly endorsing other candidates, personally and directly soliciting campaign funds, and receiving campaign contributions without time limitations would be enforced against him. The Sixth Circuit concluded that the plaintiff satisfied the injury-in-fact requirement for Article III standing to bring an action alleging that these provisions violated the First and Fourteenth Amendments. Id.
In Green Party of Tennessee v. Hargett , 791 F.3d 684, 695 (6th Cir. 2015), where the plaintiffs alleged that Tennessee's state ballot access and retention statutes imposed an unconstitutional burden on their First and Fourteenth Amendment rights to create and develop as new political parties, the defendants contended that the plaintiffs had "not demonstrated an injury in fact because there is no evidence that the statute has been, or would be, enforced." The Sixth Circuit rejected the argument and found that the plaintiffs had constitutional standing. The Sixth Circuit pointed out that "[w]hile defendants have *811 not enforced or threatened to enforce this statute against plaintiffs or any other political party, they also have not explicitly disavowed enforcing it in the future." Id. at 696. The Sixth Circuit stated that in such situations, the Supreme Court has held that plaintiffs have standing to challenge statutes. Id. (citing Babbitt, supra , and Platt, supra ).
In Russell v. Lundergan-Grimes , 784 F.3d 1037 (6th Cir. 2015), the plaintiffs (a business and its owner) filed suit against various state and county officials, seeking a declaratory judgment and permanent injunction on their allegations that a Kentucky electioneering statute violated their First Amendment free speech rights. In support of his standing to sue, the business owner cited Kentucky Attorney General Conway's "role in enforcing election laws, and that he fears prosecution." Id. at 1049. The Sixth Circuit held that the " 'fear of prosecution' is sufficient to confer standing when it is 'reasonably founded in fact.' " Id. (quoting Planned Parenthood Ass'n v. City of Cincinnati , 822 F.2d 1390, 1395 (6th Cir. 1987) ). Further, the Sixth Circuit explained that "[w]hen he filed his complaint, Russell needed only to plead general facts that would suggest that Conway had injured Russell either through actions already taken or actions Russell reasonably feared might be taken as a result of Russell's conduct." Id. The Court stated that "Russell must plead-and in later stages of litigation, prove-'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder.' " Id. (quoting Babbitt , 442 U.S. at 298, 99 S.Ct. 2301 ).
In addition to the Sixth Circuit case law following Babbitt , this Court takes note of a district court case with similar facts, Hill v. Williams , No. 16-CV-02627-CMA, 2016 WL 8667798, at *2 (D. Colo. Nov. 4, 2016), where the plaintiffs were registered voters who intended to vote in person on Election Day, take a photograph of their completed ballots, and post the photographs on social media, activity that they believed was prohibited by Colorado law. Like Secretary Johnson, the defendant in Hill argued that the plaintiffs lacked standing to pursue their case where the attorney general had disavowed any intent to prosecute under the challenged statute. Id. at *4. The district court opined that the "[d]efendants' resolute belief that the statute is constitutional, in spite of their recent averments, amounts to a Sword of Damocles for Plaintiffs or any Colorado voters living in fear of prosecution." Id. at *5. The district court therefore decided that it would "not conclude, in light of the pervasive uncertainty surrounding the law, that the Plaintiffs in this case are unreasonable to fear the specter of prosecution." Id. at *5.
Here, too, the Court determines that Plaintiff satisfies the injury-in-fact requirement. First, Plaintiff alleges that were it not for Michigan's laws and instructions, he "would engage in taking photographs in polling places in future elections" (First Am. Compl. ¶¶ 7, 17, ECF No. 65 at PageID.686, 689). Plaintiff alleges an "intention to engage in a course of conduct arguably affected with a constitutional interest," Babbitt , 442 U.S. at 298, 99 S.Ct. 2301. See also Susan B. Anthony List v. Driehaus , 573 U.S. 149, 134 S.Ct. 2334, 2345, 189 L.Ed.2d 246 (2014) (holding, where both petitioners pleaded specific statements they intended to make in future election cycles, that "[n]othing in this Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law.").
Second, Plaintiff's course of conduct is arguably proscribed by Michigan law and *812 arguably constitutes an "actionable Election Day offense" under the Secretary's rules. See Susan B. Anthony , 134 S.Ct. at 2344 ; Babbitt, supra. Specifically, Michigan law requires the rejection of Plaintiff's ballot and forfeiting his right to vote in a primary or general election. See MICH. COMP. LAWS §§ 168.579, 168.738(2). Further, under Secretary's Rule 1 and Secretary's Rule 2, Plaintiff could be imprisoned and fined for photography in a polling place or voting station.
Last, future elections are certainties. While Secretary Johnson, per her Director of Elections, attests that she "has not and will not instruct local election officials to refer voters who expose their ballot in the polling place for prosecution" (Thomas Aff. ¶ 12, ECF No. 16-2 at PageID.105), Secretary Johnson has concomitantly maintained in this case that the challenged provisions and instructions are constitutional. Further, where the operation of the laws and instructions have been unclear, Plaintiff is not without "some reason in fearing prosecution for violation of the ban," Babbitt , 442 U.S. at 302, 99 S.Ct. 2301. Indeed, the crux of his due process claim is that there is no process for rejecting a voter's ballot for exposure, and "no opportunity to appeal, in the law or instructions" (ECF No. 72 at PageID.728). See Harris v. Lexington-Fayette Urban Cty. Gov't , 685 F. App'x 470, 472 (6th Cir. 2017) (explaining that if a jurisdictional attack implicates an element of the cause of action, then the court's jurisdictional inquiry is confined to the allegations in the plaintiff's complaint, "no matter what evidence a defendant has submitted in attempting to disprove jurisdiction").
The Court therefore determines that this case does not fall within the category of cases properly dismissed as "conjectural or hypothetical." Rather, the positions of the parties at bar are sufficiently adverse with respect to the statutes and instructions at issue to present a "case or controversy" within the jurisdiction of this Court.
III. CONCLUSION
For the foregoing reasons,
IT IS HEREBY ORDERED that Defendant Secretary of State's Motion to Dismiss Based on Standing (ECF No. 70) is DENIED.
IT IS FURTHER ORDERED that Defendant shall file an Answer to the Amended Complaint (ECF No. 65) within 14 days of the date of entry of this Opinion and Order.

In its December 21, 2016 Order reversing the Preliminary Injunction (ECF No. 30), the Sixth Circuit relied on "the reasons provided" in its October 28, 2016 Order granting a stay of the Preliminary Injunction, an Order that was issued with one judge concurring and one judge dissenting (ECF No. 26).

http://www.michigan.gov/documents/sos/Actionable_Election_Day_Offenses_472371_7.pdf