Opinion by Judge GOULD; Concurrence by Judge BERZON.
OPINION
GOULD, Circuit Judge:
Plaintiff-Appellant Randolph Wolfson, an Arizona state judicial candidate in 2006 and 2008, challenges several provisions of the Arizona Code of Judicial Conduct regulating judicial campaigns. Specifically, Wolfson challenges: (1) the Personal Solicitation Clause, Rule 4.1(A)(6)[1]; (2) the En *1179 dorsement Clauses, Rule 4.1(A)(2), (3), (4)[2] ; and (3) the Campaign Prohibition, Rule 4.1(A)(5)[3]. Together, the clauses do not allow Wolfson, while running for judicial office, to personally solicit funds for his own campaign or for a campaign for another candidate or political organization, to publicly endorse another candidate for public office, to make speeches on behalf of another candidate or political organization, or to actively take part in any political campaign.
On May 21, 2008, Wolfson filed a complaint against the Commissioners of the Arizona Commission on Judicial Conduct and Chief Bar Counsel Robert B. Van Wyck (collectively “the Commission”) in the United States District Court for the District of Arizona, alleging that the campaign regulations violated his First Amendment rights of freedom of speech and freedom of association.[4]
The district court disagreed and granted the Commission’s motion for summary judgment.[5] Wolfson v. Brammer, 822 F.Supp.2d 925, 931-32 (D.Ariz.2011). The district court held that strict scrutiny was inappropriate, and instead adopted the Seventh Circuit’s approach of applying an intermediate level of scrutiny to assess judicial campaign regulations like Arizona’s Rules. Id. at 929-30 (citing Siefert v. Alexander, 608 F.3d 974, 983-88 (7th Cir.2010) and Bauer v. Shepard, 620 F.3d 704, 713 (7th Cir.2010)). Applying this level of scrutiny, the district court upheld Arizona’s Rules as striking an appropriate “constitutional balance” between judicial candidates’ First Amendment rights and the state’s compelling interests in protecting litigants’ due process rights and in ensuring the impartiality of the judiciary. See id. at 931-32.
Wolfson timely appealed. After an original panel hearing, Wolfson v. Concannon, 750 F.3d 1145 (9th Cir.2014), the case was ordered to be reheard en banc, Wolfson v. Concannon, 768 F.3d 999 (9th Cir.2014). Following this decision but before we reheard the case, the Supreme Court decided Williams-Yulee v. Florida Bar, — U.S. -, 135 S.Ct. 1656, 191 L.Ed.2d 570 (2015).
*1180 I
The First Amendment, applicable to the States through the Due Process Clause of the Fourteenth Amendment, says that “Congress shall make no law ... abridging the freedom of speech.” U.S. Const, amend. I; McIntyre v. Ohio Elections Comm’n, 514 U.S. 334, 336 n. 1, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). Wolfson’s appeal requests that we address: (1) the district court’s application of intermediate scrutiny to assess Arizona’s restrictions on judicial candidate speech; and (2) the impact of Williams-Yulee v. Florida Bar, — U.S. -, 135 S.Ct. 1656, 191 L.Ed.2d 570 (2015), on Arizona’s Personal Solicitation Clause, Endorsement Clauses, and Campaign Prohibition.
II
We first address whether the district court was correct in adopting the Seventh Circuit’s intermediate level of scrutiny to assess Arizona’s judicial speech restrictions. We hold that, in light of Williams-Yulee, it was not.
The Supreme Court has repeatedly held that “[t]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office.” Citizens United v. Fed. Election Comm’n, 558 U.S. 310, 339-40, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (quoting Eu v. S.F. Cty. Democratic Cent. Comm., 489 U.S. 214, 223, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989)) (internal quotation marks omitted). This “requires us to err on the side of protecting political speech rather than suppressing it.” Fed. Election Comm’n v. Wis. Right to Life, Inc., 551 U.S. 449, 457, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007).
In Williams-Yulee, a plurality of the Supreme Court applied similar reasoning when addressing the level of scrutiny appropriate for assessing Florida’s Code of Judicial Conduct Canon 7C(1), a prohibition on personal solicitation during judicial campaigns. See 135 S.Ct. at 1664-65 (“As we have long recognized, speech about public issues and the qualifications of candidates for elected office commands the highest level of First Amendment protection.”). Picking up where the Court left off in Republican Party of Minn. v. White, 536 U.S. 765, 774-75, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (White I) (assuming without deciding that strict scrutiny was' appropriate for restrictions on judicial candidates’ ability to announce their views on various legal issues), the Williams-Yulee plurality held that strict scrutiny was warranted. Williams-Yulee, 135 S.Ct. at 1665. “A State may restrict the speech of a judicial candidate only if the restriction is narrowly tailored to serve a compelling interest.” Id.
We agree with the plurality and hold that strict scrutiny is appropriate here. Even before Williams-Yulee, other courts had come to similar conclusions. See Carey v. Wolnitzek, 614 F.3d 189, 199-200 (6th Cir.2010); Republican Party of Minn. v. White, 416 F.3d 738, 748-49 (8th Cir.2005) (en banc) (White II); Weaver v. Bonner, 309 F.3d 1312, 1315, 1322-23 (11th Cir. 2002). Additionally, our holding is not limited to Arizona’s Personal Solicitation Clause, which has no meaningful difference from Florida’s Canon 7C(1).[6] We also *1181 hold that strict scrutiny is similarly appropriate for Arizona’s Endorsement Clauses and for its Campaign Prohibition. A decision otherwise would be contrary to the Supreme Court’s broad reasoning in Williams-Yulee, which addressed not just a prohibition on personal requests for campaign contributions, but state restrictions on 'judicial candidate speech generally. See Williams-Yulee, 135 S.Ct. at 1665. A decision otherwise also would put us in conflict with the approach taken by the Sixth, Eighth, and Eleventh Circuits.
Ill
Federal, state, and local governments have struggled to meet strict scrutiny when defending speech restrictions. See, e.g., Reed v. Town of Gilbert, — U.S. -, 135 S.Ct. 2218, 2231-32, 192 L.Ed.2d 236 (2015); United States v. Playboy Entm’t Grp., Inc., 529 U.S. 803, 813-14, 816, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000); OSU Student All. v. Ray, 699 F.3d 1053, 1062-64 (9th Cir.2012); United States v. Alvarez, 617 F.3d 1198, 1215-18 (9th Cir.2010). To overcome such a high standard of review, the government is required to prove that “the restriction ‘furthers a compelling interest and is narrowly tailored to achieve that interest.’ ” Citizens United, 558 U.S. at 340, 130 S.Ct. 876 (quoting Wis. Right to Life, 551 U.S. at 464, 127 S.Ct. 2652). Following Williams-Yulee,[7] we hold that Arizona meets that standard for all of the challenged restrictions on judicial candidate speech.

A. The Personal Solicitation Clause

Wolfson contends that Arizona’s Personal Solicitation Clause, which prohibits him, while running for judicial office, from personally soliciting funds for his own campaign, fails strict scrutiny. He argues that Arizona’s interest is not narrowly tailored, and that Williams-Yulee does not control our decision because Florida and Arizona have different interests in upholding their respective personal solicitation prohibitions.
1. Compelling Interest
Wolfson does not contend that Arizona lacks a compelling interest behind this solicitation prohibition. Instead, he argues that Arizona’s interest is significantly different than Florida’s interest in Canon 7C(1), making the Court’s strict scrutiny analysis in Williams-Yulee inapplicable to Arizona’s Clause. Attempting to distinguish the two states’ interests, Wolfson first points to Florida’s Code of Judicial Conduct Canon 1 and its commentary: “Deference to the judgments and rulings of courts depends upon public confidence in the integrity - and independence of judges. The integrity and independence of judges depend in turn upon their acting without fear or favor.” Code of Judicial Conduct for the State of Florida 6 (2014), http://www.fioridasupremecourt.org/ decisions/ethics/Code_Judicial_Conduct. pdf. He compares this language to that of Arizona’s Code of Judicial Conduct Rule 1.2 and Comment 5, which he contends demonstrate that Arizona’s interest is protecting the public’s perception of “the judge’s honesty, impartiality, temperament, or fitness.” Ariz.Code of Judicial Conduct Rule 1.2 (2014), cmt. n.5, http:// www.azcourts.gov/portals/137/rules/ Arizona% 20Code% 20of% 20Judicial% 20Conduct.pdf. An interest in judicial *1182 “honesty, impartiality, temperament, or fitness,” Wolfson argues, is different than a concern for “fear or favors.”
This is a distinction without a material difference. Even if we consider the language to which Wolfson points, the Supreme Court did not uphold Florida’s prohibition because of an interest in curbing “fear or favors.” Instead, the Court was broad in its language and reasoning. “We have recognized the ‘vital state interest’ in safeguarding ‘public confidence in the fairness and integrity of the nation’s elected judges,’ ” Williams-Yulee, 135 S.Ct. at 1666 (quoting Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 889, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009)), because the “judiciary’s authority ... depends in large measure on the public’s willingness to respect and follow its decisions.” Id. Arizona’s interest, outlined in Rule 1.2 and its comments, is similar, if not identical.
Moreover, the Supreme Court recognized that the “concept of public confidence in judicial integrity does not easily reduce to precise definition.” Id. at 1667. Even if Arizona adopted slightly different language for its articulation of its interest,[8] Arizona is similarly interested in upholding the judiciary’s credibility. There are no magic words required for a state to invoke an interest in preserving public confidence in the integrity of the state’s sitting judges.
Arizona’s interest behind its Personal Solicitation Clause is compelling.
2. Narrowly Tailored
Wolfson’s arguments that Arizona’s Personal Solicitation Clause is not narrowly tailored are precluded by Williams-Yulee. First, Wolfson contends that the Personal Solicitation Clause is overbroad because it covers solicitation methods, such as mass mailings and speeches to large groups, that would not result in a quid pro quo. However, the Supreme Court rejected the argument that the state may prohibit only solicitation methods that are the most likely to erode public confidence. Williams-Yulee, 135 S.Ct. at 1671. The Court held that the argument “misperceives the breadth of the compelling interest” and that, though that “interest may be implicated to varying degrees in particular contexts, ... the interest remains whenever the public perceives the judge personally asking for money.” Id.
Second, Wolfson argues that the Personal Solicitation Clause is not the least restrictive means to effectuate Arizona’s interest because Arizona could have adopted contribution limitations or a mandatory re-cusal rule. Again, the Supreme Court did not consider this argument persuasive. Id. at 1671-72. Forced recusals would disable jurisdictions with a small number of judges, erode public confidence in the judiciary, and create an incentive for litigants to make contributions for the sole purpose of forcing the judge to later re-cuse himself or herself from the litigant’s cases. Id. Contribution limits would be similarly ineffective. The improper appearance of a judicial candidate soliciting money would still remain and, even though the Court had previously held that contribution limitations advance the interest against quid pro quo corruption, a state is not restricted to pursuing its interest by a single means. Id. at 1672.
*1183 We hold that Arizona’s Personal Solicitation Clause is narrowly tailored to achieve the state’s compelling interest. The state reasonably wants to uphold the public’s perception of publicly elected judges as being fair-minded and unbiased, and may do so by prohibiting judicial candidates from making personal solicitations.

B. The Endorsement Clauses and the Campaign Prohibition

Wolfson also argues that Arizona’s Endorsement Clauses and Campaign Prohibition are not narrowly tailored to Arizona’s compelling interest in public confidence in the judiciary’s integrity.[9] These Clauses prohibit him, while running for judicial office, from personally soliciting funds for a campaign for another candidate or political organization, publicly endorsing or making a speech on behalf of another candidate for public office, or actively taking part in any political campaign. Wolf-son contends that the prohibitions are un-derinclusive, overbroad, and generally not tailored enough to the interest at hand. We disagree. Arizona can properly restrict judges and judicial candidates from taking part in political activities that undermine the public’s confidence that judges base rulings on law, and not on ?party affiliation.
1. Underinclusivity
Wolfson contends that Arizona’s Endorsement Clauses and Campaign Prohibition are underinclusive because they allow judicial candidates to receive endorsements, allow judicial candidates to endorse public officials and non-candidates, and allow other candidates to participate in judicial campaigns. “[Ujnderinclusiveness can raise ‘doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint,’ ” Williams-Yulee, 135 S.Ct. at 1668 (quoting Brown v. Entm’t Merchs. Ass’n, 564 U.S. 786, 131 S.Ct. 2729, 2740, 180 L.Ed.2d 708 (2011)), and can “reveal that a law does not actually advance a compelling interest.” Id. However, “[a] State need not address all aspects of a problem in one fell swoop” and can “focus on ... [the] most pressing concerns.” Id.
Once again, Williams-Yulee controls our reasoning. In assessing whether Florida’s solicitation clause was underinclusive, the Court looked at whether Canon 7C(1) was “aim[ed] squarely at the conduct most likely to undermine public confidence in the integrity of the judiciary,” “applie[d] evenhandedly to all judges and judicial candidates, regardless of their viewpoint,” and was “not riddled with exceptions.” Id. at 1668-69. We do not believe that the analysis should be any different when assessing a prohibition of endorsements or participation in political campaigns. Williams-Yulee may have been about a prohibition on direct candidate solicitations of campaign contributions, but the Supreme Court’s reasoning was broad enough to encompass underinclusivity arguments aimed at other types of judicial candidate speech prohibitions such as Arizona’s Endorsement Clauses and its Campaign Prohibition.
And both the Endorsement Clauses and Campaign Prohibition fit easily under the Williams-Yulee underinclusivity analysis. First, Arizona squarely aimed at preventing conduct that could erode the judiciary’s *1184 credibility. When a judicial candidate actively engages in political campaigns, a judge’s impartiality can be put into question, and the public can lose faith in the judiciary’s ability to abide by the law and not make decisions along political lines. Arizona’s Endorsement Clauses and Campaign Prohibition are aimed at these valid concerns. See Arizona Judicial Code of Conduct Rule 4.1, Comment 1 (“Rather than making decisions based upon the expressed views or preferences of the electorate, a judge makes decisions based upon the law and the facts of every case. Therefore, in furtherance of this interest, judges and judicial candidates must, to the greatest extent possible, be free and appear to be free from political influence and political pressure.”). Further, the Endorsement Clauses and Campaign Prohibition apply to both judges and judicial candidates and have few exceptions.[10]
We need not question whether Arizona could have, as Wolfson argues, prohibited more types of endorsements or campaign participation. “[Pjolicymakers may focus on their most pressing concerns” and the fact that the state could “conceivably could have restricted even greater amounts of speech in service of their stated interests” is not a death blow under strict scrutiny. Williams-Yulee, 135 S.Ct. at 1668. Arizona’s Endorsement Clauses and Campaign Prohibition are not underinclusive.
2. Overinclusivity
Wolfson next contends that the Endorsement Clauses and Campaign Prohibition are unconstitutionally overbroad because the Campaign Prohibition bans involvement with ballot measures, and the Endorsement Clauses forbid judges from endorsing anyone, even candidates like the President of the United States who are highly unlikely to appear before the judge.[11] A regulation “may be overturned as impermissibly overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute’s plainly legitimate sweep.” Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 n. 6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (internal quotation marks omitted).
Again, Williams-Yulee forecloses Wolf-son’s arguments. There, the petitioner contended that even though Florida could constitutionally prevent judges from soliciting one-on-one or in person with lawyers and litigants, Canon 7C(1) was overbroad because it included a prohibition of solicitation through mass mailings. Williams-Yulee, 135 S.Ct. at 1670-71. The petitioner argued that the latter would have less impact on the public confidence of the judiciary. Id. at 1671. But the Supreme Court was not convinced, reasoning that such distinctions became so fíne as to be unworkable, and in large part, Florida’s *1185 restriction still left judicial candidates “free to discuss any issue with any person at any time.” Id. at 1670-71. Further, the Court held that though these speech restrictions must be narrowly tailored, they need not be “perfectly tailored.” Id. at 1671 (quoting Burson v. Freeman, 504 U.S. 191, 209, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992)). “[M]ost problems arise in greater and,lesser gradations, and the First •Amendment does not confine a State to addressing evils in their most acute form.” Id.; see also O’Toole v. O’Connor, 802 F.3d 783, at 790-91 (6th Cir.2015).
Wolfson asks us to draw a similarly unworkable and unnecessary line. Although supporting a United States presidential candidate may have less of an effect on the public confidence than endorsing or campaigning for an • Arizona State senator or a local prosecutor, creating a rigid line is as unworkable as it is unhelpful. Judges engaging in political acts may present different levels of impropriety in different situations. It is not our proper role to second — guess Arizona’s decisions in this regard. Much as the state drew a line between personal solicitation by candidates and by committees in order to preserve public confidence in - the judiciary’s integrity, Williams-Yulee, 135 S.Ct. at 1671, so too can the state decide that judicial candidates should not engage in legislative or executive campaigns. “These considered judgments deserve our respect, especially because they reflect sensitive choices by States in an area central to their own governance — how to select those who ‘sit as their judges.’” Id. (quoting Gregory v. Ashcroft, 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991)).
Our conclusion is consistent with White I. Arizona’s prohibitions do not prevent judicial candidates from announcing their views on disputed legal and political subjects. See White I, 536 U.S. at 788, 122 S.Ct. 2528. Instead, Arizona simply makes the distinction that a judicial candidate may do so only in relation to his or her own campaign. This follows the reasoning in White I, where the Supreme Court was concerned about restrictions on the ability to express legal views while campaigning, see id. at 770-74, 122 S.Ct. 2528, not on the ability to advance the political views and aspirations of another candidate. The latter is not the kind of speech the Court in White I sought to protect. See Wersal v. Sexton, 674 F.3d 1010, 1026 (8th Cir.2012) (“[T]he endorsement clause does not regulate speech with regard to any underlying issues, and thus the candidates are free to state their positions on these issues, in line with White /.”); Siefert, 608 F.3d at 984 (“While an interest in the impartiality and perceived impartiality of the judiciary does not justify forbidding judges from identifying as members of political parties, a public endorsement is not the same type of campaign speech [as that] targeted by the impermissible rule against talking about legal issues the Supreme Court struck down in White /.”); Bauer, 620 F.3d at 711-12 (holding that the reasoning employed in Siefert to uphold a prohibition against judicial candidate endorsements is equally applicable to a prohibition on partisan activities).
The compelling interest in preserving public confidence in the integrity of judiciary warrants a favorable view of Arizona’s attempt to foreclose judicial candidates from engaging in political campaigns other than their own.' The Endorsement Clauses and Campaign Prohibition are not fatally overbroad.
3. Least Restrictive Means
Finally, Wolfson contends that Arizona’s Endorsement Clauses and Cam *1186 paign Prohibition are not narrowly tailored because they do not offer the least restrictive means to further the state’s interest. He argues that the Clauses do not prevent judges from favoring certain candidates that may appear in court, and even if they did, recusal would be the best way to handle such impartiality or appearance of impartiality. The government may only “regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest.” Sable Commc’ns of Cal., Inc. v. FCC, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989).
But recusal is no answer at all, and this unworkable alternative was flatly dismissed in Williams-Yulee. A rule requiring judges to recuse themselves from every case where they endorsed or campaigned for one of the parties could “disable many jurisdictions” and cripple the judiciary. See Williams-Yulee, 135 S.Ct. at 1671. Four of Arizona’s counties have only one superior court judge and two other counties have only two superior court judges. Arizona Judicial Branch, Fiscal Year 2014 Annual Report 4, http:// www.azcourts.gov/Portals/38/2014% 20An-nual% 20Report.pdf. Campaigning for frequent litigants would cause an insurmountable burden that other judges and other counties may not be able to bear. Moreover, an extensive recusal record could cause the same erosion of public confidence in the judiciary that Arizona’s Endorsement Clauses and Campaign Prohibition are trying to prevent.
We hold that the Endorsement Clauses and Campaign Prohibition are narrowly tailored to achieve Arizona’s compelling interest.
IV
Even though the district court erred when it bypassed strict scrutiny in favor of the intermediate level of scrutiny used by the Seventh Circuit, it arrived at the correct result. The Personal Solicitation Clause, Endorsement Clauses, and Campaign Prohibition all withstand First Amendment analysis under strict scrutiny. Arizona has a compelling interest in upholding public confidence in the judiciary. And in light of Williams-Yulee, we hold that Arizona’s Rules are narrowly tailored to its compelling interest. The judgment of the district court is therefore
AFFIRMED.

. "A judge or a judicial candidate shall not ... personally solicit or accept campaign con *1179 tributions other than through a campaign committee authorized by Rule 4.4...." Ariz. Code of Judicial Conduct Rule 4.1(A)(6) (2014), http://www.azcourts.gOv/portals/l 37/ rules/Arizona% 20Code% 20o£% 20Judicial% 20Conduct.pdf.

. "A judge or a judicial candidate shall not ... (2) make speeches on behalf of a political organization or another candidate for public office; (3) publicly endorse or oppose another candidate for any public office; solicit funds for or pay an assessment to a political organization or candidate, make contributions to any candidate or political organization in excess of the amounts permitted by law, or make total contributions in excess of fifty percent of the cumulative total permitted by law.... ” Id. at 4.1(A)(2), (3), (4).

. "A judge or a judicial candidate shall not ... actively take part in any political campaign other than his or her own campaign for election, reelection or retention in office.” Id. at 4.1(A)(5).

. Wolfson’s complaint also- named as defendants Commissioners of Arizona Supreme Court Disciplinary Commission, but Wolfson has since voluntarily dismissed all claims against these defendants. Wolfson v. Brammer, 822 F.Supp.2d 925, 926-27 (D.Ariz. 2011).

. The district court originally dismissed Wolf-son’s claims as moot because the election had passed and Wolfson was no longer a judicial candidate. Wolfson v. Brammer, No. CV-08-8064 — PHX-FJM, 2009 WL 102951, at *3 (D.Ariz. Jan. 15, 2009). We disagreed, and reversed and remanded the case. Wolfson v. Brammer, 616 F.3d 1045, 1066-67 (9th Cir. 2010). We now review the decision made on remand.

. Florida’s Canon 7C(1) reads: "A candidate, including an incumbent judge, for a judicial office that is filled by public election between competing candidates shall not personally solicit campaign funds, or solicit attorneys for publicly stated support, but may establish committees of responsible persons to secure and manage the expenditure of funds for the candidate’s campaign and to obtain public statements of support for his or her candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from any person or corporation authorized by law.” Code of Judicial Conduct for the State of Florida 38 (2014), http://www. floridasupremecourt.org/decisions/ethics/ Code_JudiciaLConduct.pdf. Arizona’s Personal Solicitation Clause similarly reads: "A judge or a judicial candidate shall not ... *1181 personally solicit or accept campaign contributions other than through a campaign committee....” Ariz.Code of Judicial Conduct Rule 4.1(A)(6) (2014), http://www.azcourts. gov/portals/137/rules/Arizona% 20Code% 20of% 20Judicial% 20Conduct.pdf.

. With the exception of the level of scrutiny addressed in Part II, above, Chief Justice Roberts' opinion in Williams-Yulee garnered a , majority. Williams-Yulee, 135 S.Ct. at 1662.

. Wolfson’s articulation of Arizona's interest stresses selective words and ignores the plain language of Rule 1.2 which is nearly identical to the interests Florida stated in Canon 1. "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.” Ariz.Code of Judicial Conduct Rule 1.2 (2014), http://www. azcourts.gov/portals/137/rules/Arizona% 20Code% 20of% 20Judicial% 20Conduct.pdf.

. Wolfson again does not contest that Arizona has a compelling interest in upholding the Endorsement Clauses and Campaign Prohibition. Arizona has a. compelling interest in upholding the public confidence in the judiciary and furthers this interest through a ban on personal solicitation and curtailment of judicial candidates’ ability to engage with the political branches of government.

. Judges and judicial candidates may make limited contributions to another candidate or political organization under Rule 4.1(A)(4) and may engage in political activity that pertains to the legal system or attend dinners or similar functions that do not constitute a public endorsement of candidates under Rule 4.1(C).

. We need not reach whether Arizona could constitutionally forbid judges from discussing ballot measures. Arizona interprets the Clauses to allow candidates to discuss any disputed issue, including those in issue-based initiatives, while cautioning that judicial candidates shall not "with respect to cases, controversies, or issues that are likely to come before the court, make pledges, promises or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office” and shall "act in a manner consistent with the impartiality, integrity and independence of the judiciary.” Ariz. Sup.Ct. Judicial Ethics Advisory Op. 06-05 (2006); see also Ariz. Sup.Ct. Judicial Ethics Advisory Op. 0801 (2008).