**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PROGRESSIVE DEMOCRATS FOR SOCIAL JUSTICE, a Democratic Club Chartered by the Santa Clara County Democratic Party; KRISTA HENNEMAN; CARLIE WARE, | No. 22-15323 |
| | D.C. No. 4:21-cv-03875-HSG |
| *Plaintiffs-Appellants*, | |
| | OPINION |
| v. | |
| ROB BONTA, in his official capacity as Attorney General for the State of California, | |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted March 29, 2023
San Francisco, California

Filed July 19, 2023

Before: Ronald M. Gould, Marsha S. Berzon, and Sandra
S. Ikuta, Circuit Judges.

Opinion by Judge Berzon;
Concurrence by Judge Ikuta

## SUMMARY[*]

### Civil Rights/First Amendment

The panel reversed the district court's summary judgment for the State of California in an action alleging that California Government Code § 3205 violates the First Amendment and Equal Protection Clause by prohibiting local government employees from soliciting political contributions from their coworkers while state employees are not similarly barred.

The panel analyzed the State's decision to restrict the expression of certain government employees—but not other government employees—under the First Amendment. The panel held that Section 3205 does not survive constitutional scrutiny under either the "closely drawn" standard from *McCutcheon v. FEC*, 572 U.S. 185 (2014), or the balancing test articulated in *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *United States v. National Treasury Employees Union*, 513 U.S. 454 (1995).

The panel held that the speculative benefits that Section 3205 may provide the Government were not sufficient to justify the burden on plaintiffs' expression. The State therefore did not meet its burden of justifying the differential

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

ban under the First Amendment. None of the materials before the State at the time of Section 3205's enactment supported the statute's distinction between local and state workers; the State offered no affirmative evidence that intra-governmental solicitations have coerced government employees into financially supporting political candidates or caused government employees to perform their duties in a partisan manner; Section 3205 did not account for agency size which undercut the State's argument that the statute was properly tailored to address the government's interest; and Section 3205 was underinclusive as a means of limiting the actuality and appearance of partisan behavior by public employees. Because the panel concluded that Section 3205 did not survive First Amendment scrutiny, it did not reach plaintiffs' Equal Protection challenge.

Concurring in the result, Judge Ikuta stated that Section 3205 violates the First Amendment as a restriction on political speech that is not justified by California's asserted governmental interests. But because California did not enact the law in its capacity as an employer, but rather in its capacity as a sovereign, the panel should have analyzed the statute under ordinary First Amendment principles and applied strict scrutiny to determine that California had not demonstrated either a compelling interest or narrowly tailored means.

## COUNSEL

Charles Gerstein (argued), Gerstein Harrow LLP, Washington, D.C.; Jason S. Harrow, Equal Citizens, Los Angeles, California; for Plaintiffs-Appellants.

Keith L. Wurster (argued), Deputy Attorney General; Mark Beckington, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General; Sacramento, California; for Defendant-Appellee

**OPINION**

BERZON, Circuit Judge:

Under California law, local government employees may not solicit political contributions from their coworkers, but state government employees may. A political organization and two of the organization's officers challenged the statute responsible for this distinction, California Government Code § 3205, as violative of the First and Fourteenth Amendments. Because the statute's discrimination against local employees is not justified under any arguably applicable standard, we hold that Section 3205 is unconstitutional and reverse the district court.

**I.**

**A.**

Section 3205 generally prohibits local government employees in California from soliciting political contributions from their coworkers. It provides in relevant part:

> (a) An officer or employee of a local agency shall not, directly or indirectly, solicit a political contribution from an officer or

employee of that agency, or from a person on an employment list of that agency, with knowledge that the person from whom the contribution is solicited is an officer or employee of that agency. . . .

(c) This section shall not prohibit an officer or employee of a local agency . . . from requesting political contributions from officers or employees of that agency if the solicitation is part of a solicitation made to a significant segment of the public which may include officers or employees of that local agency.

(d) Violation of this section is punishable as a misdemeanor. The district attorney shall have all authority to prosecute under this section.

State government employees are not similarly barred from soliciting contributions from their colleagues. There *are* limitations on their political fundraising: they may not solicit during work hours, and they may not use state resources, their titles, or their positions when fundraising. *See* Cal. Gov't Code § 19990(a)–(b). But there is no state law or regulation that categorically bars all forms of political solicitations among state workers.

This distinction between local and state employees' solicitations rights did not always exist. In 1913, the California State Legislature enacted legislation banning state employees from soliciting contributions from state civil service employees. *See* 1913 Cal. Stat. 1035, 1046–47. Five decades later, the Legislature enacted a law prohibiting

political solicitation among local government employees. *See* 1963 Cal Stat. 4078, 4079. So between 1963 and 1976, both state and local workers were forbidden from soliciting political contributions from their coworkers. *Compare* 1913 Cal. Stat. 1035, 1046–47, *and* 1963 Cal Stat. 4078, 4079, *with* 1976 Cal. Stat. 6352, 6353.

This era of parity did not last. Shortly after the Legislature enacted its solicitation ban for local employees, the California Supreme Court decided several cases limiting the government's ability to restrict the political activity of public workers. *See, e.g.*, *Fort v. Civ. Serv. Comm'n.*, 61 Cal. 2d 331 (1964); *Bagley v. Wash. Twp. Hosp. Dist.*, 65 Cal. 2d 499 (1966). Then, in 1976, State Assemblyman John Vasconcellos introduced Assembly Bill 4351, a bill to loosen certain restrictions on the political speech of government employees. *See* A.B. 4351, 1975–76 Leg., Reg. Sess. (Cal. 1976) (as introduced).

As initially drafted, AB 4351 repealed the State's bans on intra-governmental solicitations for state and local employees, treating both sets of workers identically. *Id.* But, in the end, AB 4351 was amended to repeal the intra-governmental solicitation ban for state employees only and to reenact the prohibition for local employees, in a renumbered Section 3205. *See* A.B. 4351, 1975–76 Leg., Reg. Sess. (Cal. 1976) (as amended in Senate, Aug. 6, 1976). Marty Morgenstern, Governor Jerry Brown's Director of the Office of Employee Relations, could "find no reason for this unique treatment of State employees, vis-a-vis local agency employees" and "recommend[ed] against signing this bill, at least until we could determine the rationale for this distinction." Memorandum from Marty Morgenstern, Director, Office of Emp. Rels., to Jerry Brown, Governor,

State of Cal. (Sept. 22, 1976). Governor Brown nonetheless signed the bill into law. *See* 1976 Cal. Stat. 6352, 6353.[1]

## B.

Plaintiffs Progressive Democrats for Social Justice, a political organization, and Krista Henneman and Carlie Ware, two officers of that organization (collectively "PDSJ"), sued to challenge the constitutionality of Section 3205. Henneman and Ware were deputy public defenders for Santa Clara County who supported Sajid Khan, a fellow county deputy public defender, in his campaign to become district attorney. They wanted to solicit contributions for Khan from other county employees, particularly other public defenders, outside of work hours and without using county resources or titles.[2] But Henneman and Ware determined, in accordance with a memorandum from Santa Clara County counsel, that individually soliciting donations from their coworkers would violate Section 3205. They therefore did not engage in the solicitations and instead filed this lawsuit challenging Section 3205 as unconstitutional. The complaint alleged that California's law violated the First Amendment and Equal Protection Clause by banning political solicitations among local employees but not among state employees.

After filing suit, PDSJ moved for a temporary restraining order enjoining the enforcement of Section 3205, which the district court denied. The parties then cross-moved for

---

[1] In 1995, the Legislature designated violations of Section 3205 as misdemeanors and authorized district attorneys to prosecute such violations. *See* 1995 Cal. Stat. 5109.

[2] At the times of the complaint and motions for summary judgment, neither Henneman nor Ware were employed as supervisors by Santa Clara County.

summary judgment on undisputed facts, including declarations from Henneman and Ware stating their desire to solicit their colleagues outside work hours and without using government resources, and the district court granted the State's motion for summary judgment.

On PDSJ's First Amendment claim, the court determined that the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968), provided the relevant framework. Weighing the "local employees' First Amendment rights against the government's justification for treating them differently from members of the public," the court found "adequate justification" for Section 3205's restriction of local employees' solicitation rights. With respect to PDSJ's Equal Protection claim, the court declined to resolve the parties' dispute over the proper level of scrutiny. Rather, Section 3205 withstood PDSJ's challenge even under a "heightened standard," the court decided, because state and local employees were not "similarly situated" and, even if they were, the statute was closely drawn to support the important state interest of reducing the existence and appearance of corruption and workplace coercion. This appeal followed.[3]

---

[3] Although the campaign for which PDSJ sought to solicit contributions has ended, no party has argued that this appeal is moot. The Supreme Court has often concluded that litigation challenging election regulations is not moot even when the election at issue is complete, because such cases can "fit comfortably within the established exception to mootness for disputes capable of repetition, yet evading review." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007); *see also Davis v. FEC*, 554 U.S. 724, 735–36 (2008). Here, Henneman and Ware have declared that they would solicit campaign contributions from other county employees for future elections were they not prohibited from doing so by California law. So the case is not moot.

## II.

"Discrimination in the First Amendment context has sometimes been characterized as a violation of the First Amendment itself and has sometimes been characterized as a violation of the Equal Protection Clause." *SEIU v. Fair Pol. Pracs. Comm'n*, 955 F.2d 1312, 1319 n.11 (9th Cir. 1992) (citations omitted). *Citizens United v. FEC*, however, explained that "the First Amendment . . . [p]rohibit[s] . . . restrictions distinguishing among different speakers, allowing speech by some but not others." 558 U.S. 310, 340 (2010). So, as the Second and Third Circuits did in similar cases, we analyze the State's decision to restrict the expression of certain government employees—but not other government employees—under the First Amendment. *See Lodge No. 5 of Fraternal Ord. of Police ex rel. McNesby v. City of Philadelphia*, 763 F.3d 358, 381 (3d Cir. 2014) ("Because the City does not enforce the Charter ban against the balance of its employees, it must explain why the ban has special significance against the police."); *Latino Officers Ass'n v. City of New York*, 196 F.3d 458, 467 (2d Cir. 1999) ("Having allowed [at least 25] organizations to use the NYPD uniform in [marches] over many decades, the NYPD cannot now deny plaintiffs the same privilege without demonstrating that their use of the uniform is both distinguishable from that of the various authorized organizations and 'so threatening to the efficiency of the [NYPD] as to render the [restriction] a reasonable response to the threat.'" (citation omitted)).

The parties disagree on the appropriate level of First Amendment scrutiny for Section 3205.

PDSJ argues that the "closely drawn" standard from *McCutcheon v. FEC*, 572 U.S. 185 (2014), applies to this

case. Under that standard, a government restriction on First Amendment rights—in *McCutcheon*, a campaign contribution limitation—can be sustained if "the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgement of associational freedoms." *Id.* at 197 (plurality opinion) (quoting *Buckley v. Valeo*, 424 U.S. 1, 25 (1976) (per curiam)). Although *McCutcheon* did not concern government employees and PDSJ does not cite cases in which distinctions between government employees were at issue, PDSJ contends that the *McCutcheon* standard is appropriate because Section 3205 discriminates among speakers in their exercise of First Amendment rights.[4]

The State, in contrast, maintains that the test articulated in *Pickering* governs, as the district court concluded. Applicable to limitations on government employee speech, *Pickering* asks "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). As the Supreme Court explained in *United States v. National Treasury Employees Union* (*NTEU*), 513 U.S. 454 (1995), "the Government's burden is greater with respect to [a] statutory restriction on expression than with respect to an isolated disciplinary action," *id.* at 468: "[t]he Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that

---

[4] PDSJ has not argued that Section 3205 should be analyzed under strict scrutiny. To the contrary, at oral argument, PDSJ's counsel reiterated that *McCutcheon*'s close scrutiny standard should apply and explained that close scrutiny and strict scrutiny were not the same standard.

expression's 'necessary impact on the actual operation' of the Government," *id.* (quoting *Pickering*, 391 U.S. at 571), and "must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way," *id.* at 475 (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) (plurality opinion)).

We need not resolve the parties' disagreement concerning the type of scrutiny applicable here, as Section 3205 does not survive constitutional scrutiny under either standard (or the more stringent strict scrutiny standard advocated for by the concurrence). In so doing, we follow the Supreme Court's lead. *McCutcheon* declined to revisit the Court's different standards for reviewing limits on political contributions and expenditures—rejecting Justice Thomas's concurrence calling for the application of strict scrutiny to contribution restrictions—because both strict scrutiny and close scrutiny required the Court to "assess the fit between the stated governmental objective and the means selected to achieve that objective" and because the contribution limit at issue failed under either standard. 572 U.S. at 199. Here, both the *McCutcheon* and *Pickering/NTEU* tests require us to: (1) evaluate the State's asserted interests in enacting Section 3205 and (2) decide whether the statute is appropriately tailored to achieve those interests. *See id.* at 197; *NTEU*, 513 U.S. at 470, 472–73, 477; *see also Lodge No. 5*, 763 F.3d at 375. And because the parties agree that *Pickering*/*NTEU* sets forth a more deferential standard than *McCutcheon*, Section 3205 necessarily fails under *McCutcheon* if it fails under *Pickering*/*NTEU*. *See Wagner v. FEC*, 793 F.3d 1, 7 (D.C.

Cir. 2015).**[5]** For the reasons stated below, we hold that "[t]he speculative benefits [Section 3205] may provide the Government are not sufficient to justify this crudely crafted burden on [PDSJ's] freedom to engage in expressive activities." *NTEU*, 513 U.S. at 477.**[6]**

---

[5] Neither the Supreme Court nor the Ninth Circuit has determined the appropriate level of scrutiny for a solicitation ban targeted at government employees. In *Williams-Yulee v. Florida Bar*, 575 U.S. 433 (2015), a plurality of the Supreme Court applied strict scrutiny to a state regulation banning all judicial candidates, whether currently employed as judges or not, from soliciting campaign contributions from anyone, not only from government employees. *See id.* at 437, 444. The section of the primary opinion in *Williams-Yulee* discussing the applicable level of scrutiny was joined by four of the Justices. *See id.* at 442–44; *id.* at 457–58 (Ginsburg, J., concurring in part and concurring in the judgment). *Wolfson v. Concannon,* 811 F.3d 1176, 1180 (9th Cir. 2016) (en banc), relied upon by the concurrence, *see* Concurrence at 31, adopted a strict scrutiny standard to review a state's solicitation restriction in "the context of judicial elections," *see* Concurrence at 32 n.5. Again, the solicitation ban in *Wolfson* applied to all judicial candidates, whether currently employed as judges or not, and solicitations from anyone, not just from government employees. *See* 811 F.3d at 1187 (Berzon, J., concurring).

[6] The concurrence contends that Section 3205 should be analyzed as a general governmental regulation on citizens, as opposed to government employees, because "California concedes that the state government has no authority over local agency employees." *See* Concurrence at 29–30. We are skeptical of this proposition. Local governments are creations of the state government under the California Constitution, *see* Cal. Const. art. XI, and California has plenary authority to regulate local governments on matters of statewide concern, *see, e.g.*, *Cal. Fed. Savs. & Loan Ass'n v. City of Los Angeles*, 54 Cal. 3d 1, 15–18 (1991). And the Legislature has explicitly stated, in the same chapter that contains Section 3205, that the "political activities of public employees are of significant statewide concern," overriding "all provisions on this subject in . . . any city, county, or city and county charter." Cal. Gov't Code

## III.

Section 3205 precludes over a million local government employees from soliciting political contributions from co-employees. "Soliciting financial support is . . . characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes." *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). Although local government employees may engage in other forms of political speech under Section 3205—such as solicitations directed at the public at large—Henneman and Ware declare, without contradiction, that individualized solicitations are "much more effective" than general solicitations. By banning targeted political solicitations among local government workers, California restricts a core form of political speech for "a vast group of present and future employees." *NTEU*, 513 U.S. at 468.

The State asserts that two primary interests justify the burdens imposed by Section 3205: (1) assuring that government employees are free from workplace pressure to support certain political causes and candidates and (2) assuring that government employees perform their duties on behalf of the public rather than for partisan gain (i.e.,

---

§ 3201. In other words, local employees operate, at least to some degree, under the State's authority. Although California argues that the State as a practical matter exercises stronger oversight over state employees than local governments do over local employees, nowhere does it assert that it has no *authority* to regulate the employment policies of local government agencies. Section 3205, which California defends as a valid exercise of state power, is a regulation on the political activities of local government employees, and the parties agree that California could have validly enacted an intragovernmental solicitation ban for both state and local employees.

avoiding the practice of "political justice," *U.S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 565 (1973)). The Supreme Court has recognized the state's legitimate interests in limiting workplace political coercion and the practice of political justice. *See id.* at 564–67. And PDSJ recognizes that these interests would likely support a ban against political solicitations among all government employees.

The critical question, then, is whether Section 3205 is properly tailored to support the State's interests, given its exclusive application to *local* government employees. In other words, California must demonstrate that Section 3205, despite its differential treatment of state and local employees, is a reasonable response to the State's posited and actual harms. *See NTEU*, 513 U.S. at 475–76. After a review of the record before us, we cannot say that the State has met its burden of justifying the differential ban under the First Amendment.

1.  None of the materials before the State at the time of Section 3205's enactment support the statute's distinction between local and state workers. In defense of the statute, the State points to several letters sent to the Legislature and Governor about Section 3205 and a committee report issued over a decade before Section 3205's enactment. But none of those documents explain why state and local workers should be treated *differently* with respect to intra-governmental solicitations.

For instance, a letter from the Sacramento City Council to the Legislature opposing AB 4351 concerned an entirely

different provision of the bill.[7] *See* Letter from Michael S. Sands, Chairman of Council Comm. on Law & Legis., Sacramento City Council, to Ralph C. Dills, Chairman of S. Gov't Org. Comm., Cal. State Legis. (July 15, 1976). And the Assembly's committee report, in significant tension with and notably predating Section 3205, discussed the need to "*improve* the political freedom of local government employees," deeming the State's limits on local workers' speech "a definite problem." *See* Assemb. of the State of Cal. Elections and Reapportionment Interim Comm., An Omnibus Report, 1963 Assemb., at 40 (1963) (emphasis added).

The only clear pre-enactment acknowledgment of Section 3205's disparate treatment of local employees was the warning from Governor Brown's chief aide on employment issues. Because Morgenstern could "find no reason for [Section 3205's] unique treatment of State employees, vis-a-vis local agency employees," he recommended that the Governor not sign AB 4351, "at least until we could determine the rationale for this distinction." Memorandum from Marty Morgenstern, Director, Office of Emp. Rels., to Jerry Brown, Governor, State of Cal. (Sept. 22, 1976).

2.  When considering First Amendment challenges, the Supreme Court and this Court review evidence beyond the information available to the legislature and executive at the

---

[7] Sacramento withdrew its opposition to the bill "[b]ecause of amendments worked out with the author" on the day before AB 4351 was amended to address this different provision. *See* Letter from Michael S. Sands, Chairman of Council Comm. on Law & Legis., Sacramento City Council, to Ralph C. Dills, Chairman of S. Gov't Org. Comm., Cal. State Legis. (Aug. 10, 1976); A.B. 4351, 1975–76 Leg., Reg. Sess. (Cal. 1976) (as amended in Senate, Aug. 11, 1976).

time of the statute's enactment. *See Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 196 (1997); *Minority Television Project, Inc. v. FCC*, 736 F.3d 1192, 1198–99 (9th Cir. 2013) (en banc). The operation of California's statutory scheme over the decades demonstrates the primary problem with Section 3205: the law curtails far more speech than necessary to achieve the State's aims.

Unlike local employees, state government employees *are* allowed to solicit political contributions from their coworkers, but only as long as the solicitations do not occur during work hours or use state titles or resources. Despite nearly thirty years under this regime, California does not identify any discipline initiated in response to such solicitations. Put another way, the State has offered no affirmative evidence that intra-governmental solicitations—constrained by the same conditions under which PDSJ seeks to solicit contributions according to their declarations—have coerced government employees into financially supporting political candidates or caused government employees to perform their duties in a partisan manner.

In *NTEU*, the Supreme Court cited an analogous lack of evidence of known misconduct in the "vast rank and file of federal employees" to strike down the federal government's blanket honoraria ban for public workers as violative of the First Amendment. 513 U.S. at 472. "A 'reasonable' burden on expression," the Justices explained, "requires a justification far stronger than mere speculation about serious harms." *Id.* at 475. The evidentiary gap here raises similarly serious questions about the need for a flat solicitation prohibition among any set of governmental employees in California.

3.    California's defense of Section 3205 is further undermined by the statute's poor fit for the State's asserted interest in limiting workplace coercion. State and local agencies vary considerably by size. For example, Santa Clara County, a local government, employs approximately 22,000 people, while the San Joaquin River Conservancy, a state agency, employs three. *See About the County*, County of                    Santa                    Clara, https://employeeservices.sccgov.org/sites/g/files/exjcpb531 /files/about-our-county.pdf  [https://perma.cc/ZJ93-CJSS]; California State Controller, *San Joaquin River Conservancy*, Government Compensation in California (July 26, 2022), https://publicpay.ca.gov/Reports/State/StateEntity.aspx?ent ityid=3831&year=2021  [https://perma.cc/38PM-WQ9T]. Agency size logically affects whether a colleague's solicitation might be understood as coercive: solicitations among colleagues in a small agency, who must collaborate on a regular basis, are likely to be perceived differently by the targets of the solicitation from solicitations among workers within a thousand-person agency, who may be colleagues in name only and may never meaningfully interact. Section 3205, however, does not account for agency size at all; it instead distinguishes only between state and local governments in its coverage. To wit, under Section 3205:

> A law clerk in a state judge's chambers may solicit political contributions for a judicial candidate from one of her two or three fellow clerks at a Friday happy hour and sit next to the other clerk the following week; meanwhile, a Los Angeles County janitor may not solicit contributions for a Presidential candidate from a Los Angeles

County prosecutor at a barbecue that they both happen to attend with family, even though both are among approximately 100,000 county employees, and even though they may go to work more than 85 miles (and an hours-long drive in LA traffic) from each other.[8]

The First Amendment does not tolerate such a "crudely crafted burden" on local employees' expressive rights. *NTEU*, 513 U.S. at 477. If the State seeks to protect government employees from undue political pressure with a solicitation ban, it cannot enact a statute that illogically distinguishes between types of government employees but fails to account for a crucial factor in determining whether the prohibited solicitations will actually result in undue pressure. Section 3205's indiscriminate application to local agencies of all sizes—and disregard for the potential for coercion in state agencies regardless of size—undercuts the State's argument that the statute is properly tailored to address the government's interests.

4.    Section 3205 fares no better with respect to California's other stated goal: limiting the actuality and appearance that government employees are working on behalf of political parties. In *Letter Carriers*, the case the State cites in support of the importance of this interest, the Supreme Court explained that avoiding the practice and appearance of "political justice" was one of the "obviously important interests" served by the Hatch Act. 413 U.S. at 564–65; *see* Pub. L. No. 89-554, 80 Stat. 378, 525 (1966).

---

[8] This hypothetical was posed by PDSJ in its briefs before the district court and the Ninth Circuit.

But the Court in that case considered a markedly different provision than the one before us today.

*Letter Carriers* upheld the Hatch Act's complete prohibition on partisan activities by federal employees. 413 U.S. at 550–51. That wide-ranging ban on political activities matched the federal government's interest in "the impartial execution of the laws" "without bias or favoritism for or against any political party." *Id.* at 565. The same cannot be said of Section 3205. California's statute is radically underinclusive as a means to limit the actuality and appearance of partisan behavior by public employees. *See Fla. Star v. B.J.F.*, 491 U.S. 524, 540–41 (1989). Even setting aside the statute's omission of state employees, local workers may still engage in a wide range of political activities under the law, including donating to partisan groups, leading political organizations, soliciting the public on behalf of their favored candidates and causes, and running for office themselves. Given the statute's narrow focus, the State cannot plausibly contend that Section 3205 meaningfully limits the actuality and public appearance of local employees behaving as partisan actors, when the law bans only the decidedly internal act of solicitations *among coworkers*.

5.   The Supreme Court's caselaw on the problems underinclusive statutes present under the First Amendment underscores Section 3205's infirmities. *Williams-Yulee v. Florida Bar*, 575 U.S. 433 (2015), reviewed a Florida canon that banned judges and judicial candidates from personally soliciting campaign contributions. "Underinclusivity creates a First Amendment concern," the Court explained, "when the State regulates one aspect of a problem while declining to regulate a different aspect of the problem that affects its stated interest in a comparable way." *Id.* at 451 (emphasis

omitted). "[A] law's underinclusivity raises a red flag." *Id.* at 449. Florida's regulation survived First Amendment scrutiny, the Court held, in part, because it was not underinclusive: "[t]he solicitation ban aim[ed] squarely at the conduct most likely to undermine public confidence in the integrity of the judiciary: personal requests for money by judges and judicial candidates." *Id.* at 449.

Section 3205 falls on the wrong side of *Williams-Yulee*'s underinclusivity line. California insists that solicitations among coworkers undermine a government's ability to function. But instead of prohibiting that speech entirely, as Florida did with judicial solicitations, the State bans solicitations among local employees and not state employees. Moreover, as we have explained, Section 3205 cannot be reasonably described as aiming squarely at the speech most likely to undermine the State's interests, because it neither accounts for agency size in addressing political coercion nor bans much of the political activity that could raise the appearance and practice of political justice. *See supra* at 17–19. In sum, Section 3205 implicates the underinclusiveness problem that Florida's canon in *Williams-Yulee* did not and also lacks the tailoring Florida's canon had.

\*        \*        \*

These combined anomalies fatally undercut California's justifications for Section 3205. The State's proffered goals are undoubtedly important. But "the lack of fit between the [State's] purported interests and [Section 3205] renders the restriction an unacceptable response to the posited harms." *Lodge No. 5*, 763 F.3d at 379.

## IV.

The State offers two primary counterarguments. First, California contends that state and local employees can be treated differently because state employees are subject to "stronger and more uniform oversight." Second, California insists that Supreme Court precedent forecloses PDSJ's challenge to Section 3205. Neither argument flies.

## A.

California argues that state employees are differently situated from local employees because the state civil service system and the California Department of Human Resources ("CalHR") govern state but not local government employees. The State does not explain how the supposed benefits flowing from these structures justify Section 3205's burdens on local employees' First Amendment rights.

1. "Uniformity" cannot be the answer. California contends that CalHR imposes uniformity on state employees by approving employment regulations for state agencies and serving as a central entity to protect state employees and their rights; this uniformity, according to California, would not exist for local employees absent Section 3205. But the State never explains why uniformity in solicitation regulation among local government entities is a worthwhile state interest, especially when Section 3205 itself creates disuniformity by treating state and local employees differently. Local governments have different workplace policies on a wide range of matters and for any number of valid reasons. *See, e.g.*, Cal. Gov't Code § 45000 (enabling cities to adopt their own personnel systems); Cal. Gov't Code § 31102 (enabling counties to adopt their own personnel systems). In fact, state law already explicitly allows local governments, in a provision also enacted by AB

4351, to devise their own policies on permissible political activities during work hours and at the workplace. *See* Cal. Gov't Code § 3207.

Further, even if we were to grant the importance of California's interest in uniformity, there is a far better alternative to Section 3205 that would at least equally well achieve the State's aims. *See Lodge No. 5*, 763 F.3d at 383–84. As PDSJ seeks, the State could allow all public employees in California to solicit contributions from their coworkers under the same restrictions currently imposed on state employees. In doing so, the State would foster *more* uniformity in the rules applicable to government employees, by harmonizing solicitation regulations between state and local government workers as well as for all local government employees. At the same time, such legislation would restrict *less* speech by enabling local workers to engage in non-coercive solicitations, while simultaneously banning solicitations among government employees under circumstances that are most likely to be coercive.

2.  The State's representation that state employees are subject to stronger oversight than local employees is no more compelling. California contends that CalHR and the state civil service system offer better protections from retaliation for state employees than local employees receive from their local governments. Yet, the State offers no evidence to justify its vague assertions.

It is impossible to judge the relevance of CalHR and the state merit system when the State does not detail any relevant "protections" supposedly offered by them. The mere existence of CalHR says nothing about the quality of oversight over state employment conditions as compared to local employment conditions. It is true but irrelevant that a

state employment agency exists for nearly 400,000 state employees while certain much smaller local governments only have a single employee to handle HR questions. And the record contains no information about the "protections" offered by the state civil service system as compared to the "protections" offered by local civil service systems—or even whether state employees are more likely than local employees to be governed by a merit system.[9]

Even if we were to somehow credit California's amorphous claims about the protections offered to state employees, the State does not explain why these protections affect whether local governments can enforce a *substantive rule* permitting local employees to solicit their coworkers under certain restrictions. California currently requires local governments, apparently without incident, to supervise a regime in which solicitations among local government colleagues are *completely* banned. If there were a structural reason local governments were incapable of enforcing more discrete bans, one would think that reason would hamper enforcement under the current, more stringent regime as well. The State's speculation about the capabilities of local government agencies combined with a record devoid of

---

[9] California's passing references to the protections offered by state unions are unpersuasive for similar reasons. Local as well as state governmental employees are entitled under California law to join unions and engage in collective bargaining. *See, e.g.*, Meyers-Milias-Brown Act, Cal. Gov't Code §§ 3500–3511; Educational Employment Relations Act, Cal. Gov't Code §§ 3540–3549.3; Ralph C. Dills Act, Cal. Gov't Code §§ 3512–3524; Higher Education Employer-Employee Relations Act, Cal. Gov't Code §§ 3560–3599. No record information suggests that state employees are covered by collective bargaining agreements at significantly higher rates than local employees or have stronger workplace protections as compared to local employees because of their unions.

specific evidence about the benefits relevant to inter-employee campaigning offered by CalHR and the state civil service system cannot sustain a flat solicitation ban among all local government employees.

**B.**

None of the cases cited by the State justify the regulatory regime created by Section 3205.

*United Public Workers of America v. Mitchell*, 330 U.S. 75 (1947), addresses a different question from the one presented in this case. In *Mitchell*, the petitioners argued that the Hatch Act covered *more* employees than necessary to achieve the federal government's anti-corruption goals. *See id.* at 100–02. Here, PDSJ contends that Section 3205 arbitrarily singles out a specific group of public employees for regulation instead of covering all state and local employees. The Supreme Court's rejection of the petitioners' claim in *Mitchell*, which challenged the Hatch Act for being overly broad, does not inform our analysis of PDSJ's claim in this dispute, which challenges California's statute for being overly narrow. *See Williams-Yulee*, 575 U.S. at 451.

Nor does a footnote from *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), undermine PDSJ's First Amendment challenge. In upholding Oklahoma's decision to ban civil servants—but not other state employees—from engaging in a range of political activities, the Supreme Court in *Broadrick* explained that "the legislature must have some leeway in determining which of its employment positions require restrictions on partisan political activities and which may be left unregulated." *Id.* at 607 n.5. This statement was made in the context of Oklahoma's scheme for designating some state employees but not others as covered by a merit-

based, nonpartisan civil service system. *See id.* at 602–07 & n.5. Such systems are designed to combat the actuality and appearance of political patronage in the more ministerial governmental jobs, while permitting other governmental employees to be appointed by, and beholden to, elected officials, reflecting the need for political control at some levels of governmental decision-making. *See id.* at 606; *Elrod v. Burns*, 427 U.S. 347, 364–66 (1976) (plurality opinion). Prohibiting civil service employees in particular from engaging in political activity directly fosters those goals.

Section 3205 operates in a decidedly different manner. Rather than banning all civil-service-covered employees from engaging in political activity, California's law prohibits all local employees, but not any state employees, from individually soliciting political contributions from their coworkers. In other words, Section 3205 matches neither the means nor ends of Oklahoma's statute: it does not track *Broadrick*'s distinction between civil-service-covered governmental employees and other governmental employees and does not use a comparably broad set of restrictions to achieve the State's interests. *Broadrick*'s footnote cannot save Section 3205 from constitutional scrutiny.

The remaining case cited by California, *Ex parte Curtis*, 106 U.S. 371 (1882), affirmed the government's power to ban solicitations among federal employees. It did not consider, and petitioners did not challenge, the government's decision to exempt presidential appointees from the ban.

## V.

We do not doubt the State's interests in combatting corruption and worker coercion. But we cannot, applying First Amendment precepts, countenance California's

"second-class treatment" of local employees, absent any plausible reason for the distinction. *See Lodge No. 5*, 763 F.3d at 381. For the foregoing reasons, we reverse the district court's grant of summary judgment to the State and remand for further proceedings consistent with this opinion.[10]

**REVERSED and REMANDED.**

IKUTA, Circuit Judge, concurring in the result

Section 3205 of the California Government Code violates the First Amendment as a restriction on political speech that is not justified by California's asserted governmental interests. But because California did not enact the law in its capacity as an employer, but rather in its capacity as a sovereign, we should analyze the statute under ordinary First Amendment principles, not under a *Pickering/NTEU* balancing test. Maj. Op. at 11–12. Therefore, I concur only in the result.

I

Krista Henneman and Carlie Ware are deputy public defenders who work for Santa Clara County. Although they wanted to solicit donations from other County employees to support the candidacy of Sajid Khan to become district attorney, they did not do so because Section 3205 of the California Government Code forbids employees of a local agency from soliciting a political contribution from an

---

[10] Because we conclude that Section 3205 does not survive First Amendment scrutiny, we do not reach PDSJ's Equal Protection challenge.

officer or employee of that agency. This suit challenging the constitutionality of Section 3205 followed.

There is no doubt that a state statute forbidding individuals from soliciting donations, a form of protected speech, impinges on the First Amendment rights of those individuals. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346–47 (2020); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 789 (1988); *Wolfson v. Concannon*, 811 F.3d 1176, 1180–81 (9th Cir. 2016). The more difficult issue is to identify the framework mandated by the Supreme Court to determine whether the government speech restriction violates the First Amendment.

Instead of determining the appropriate degree of constitutional scrutiny with which to review Section 3205, Maj. Op. 11, the majority analyzes the law under the test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *United States v. National Treasury Employees Union (NTEU)*, 513 U.S. 454 (1995), explaining that "because the parties agree that *Pickering/NTEU* sets forth a more deferential standard," "Section 3205 necessarily fails under" a higher level of scrutiny "if it fails under *Pickering/NTEU*."[1] Maj. Op. 11.

---

[1] Relying on *McCutcheon* (which declined to determine if the challenged restriction on political contributions was subject to strict scrutiny or closely drawn scrutiny review because the contribution limit at issue failed under the less rigorous closely drawn scrutiny standard, *see McCutcheon v. FEC*, 572 U.S. 185, 199 (2014)), the majority declines to "resolve the parties' disagreement concerning the type of scrutiny applicable here" because Section 3205 fails under any level of scrutiny. Maj. Op. 11. The *McCutcheon* approach does not apply in this context, however, because while both strict scrutiny and closely drawn scrutiny

This is incorrect.  *Pickering* and *NTEU* considered the balance between the government's needs as an employer and its employees' First Amendment rights.  *See Pickering*, 391 U.S. at 568; *see also NTEU*, 513 U.S. at 468.  *Pickering* recognized that the government's "interests as an employer in regulating the speech of its employees . . . differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."  391 U.S. at 568.  As an employer, the government is "charged by law with doing particular tasks" and "hire[s] employees to help do those tasks as effectively and efficiently as possible." *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 598 (2008) (citation omitted).  "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti v. Ceballos*, 547 U.S. 410, 418–19 (2006); *see also Rankin v. McPherson*, 483 U.S. 378, 384 (1987) ("[P]ublic employers are *employers*, concerned with the efficient function of their operations.").

In light of the nature of the employer-employee relationship, the Supreme Court held that challenges to restrictions on public employees' speech are evaluated by balancing their First Amendment rights "as a citizen, in commenting upon matters of public concern" against the government's interest "as an employer, in promoting the efficiency of the public services it performs through its employees."  *Pickering*, 391 U.S. at 568; *see also NTEU*,

---

may apply to government restrictions on speech generally, *see* 572 U.S. at 199, the *Pickering/NTEU* test applies only to government restrictions on speech of its employees, and thus is not a relevant standard for determining if Section 3205 violates the First Amendment.  *See infra* pp. 28–30.

513 U.S. at 468.  This balancing test reflects "the common-sense realization that government offices could not function if every employment decision became a constitutional matter." *Engquist*, 553 U.S. at 599 (cleaned up); *see also Rankin*, 483 U.S. at 384 ("[R]eview of every personnel decision made by a public employer could, in the long run, hamper the performance of public functions.").  It also ensures that "constitutional review of government employment decisions" (where "the government act[s] 'as proprietor to manage [its] internal operation'") "rest[s] on different principles than review of restraints imposed by the government as sovereign" (where the government acts "as lawmaker" "to regulate or license").  *Engquist*, 553 U.S. at 598–99 (cleaned up) (citation omitted).

In light of that underlying rationale, it follows that the *Pickering/NTEU* balancing test is the appropriate analytic framework only where the government restricts speech in order to advance its interest "in promoting the efficiency of the public services it performs through" the employee subject to the restriction.  *Pickering*, 391 U.S. at 568; *see also Connick v. Myers*, 461 U.S. 138, 150–51 (1983) (recognizing that the *Pickering* balancing test applies where the government is "promot[ing] efficiency and integrity in the discharge of official duties" (citation omitted)).  Because the government may have such an interest where the person is a contractor or vendor, the test applies to speech restrictions imposed on those individuals as well.  *See Bd. of Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr*, 518 U.S. 668, 673 (1996) (government contractors); *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004) (government vendors).

But we have never applied the test to a government's imposition of speech restrictions on individuals who provide

no services and perform no duties for the government at issue.[2]  That is the situation here.  California concedes that the state government has no authority over local agency employees.  Indeed, California's theory of the case is that Section 3205 is justified *because* California has no power or jurisdiction to oversee local agency employees and their solicitation of political contributions from co-workers. California repeatedly states that "[t]here is no . . . oversight, absent Section 3205, for local agencies," and that "California's 3,500 local agencies are each responsible for managing their own personnel," thus recognizing that the state government has no authority in this area.  Put differently, California concedes that it did not enact and does not enforce Section 3205 in order to "promot[e] the efficiency of the public services it performs through" local agencies.  *Pickering*, 391 U.S. at 568.  Therefore, the *Pickering/NTEU* balancing test is simply inapplicable here. It should not be used to analyze the constitutionality of Section 3205.[3]

---

[2] A state government may have an employer-employee interest where a person officially employed by a local government functionally serves as an employee of the state government.  *See, e.g.*, *Weiner v. San Diego County*, 210 F.3d 1025, 1030 (9th Cir. 2000) (holding that, for purposes of a § 1983 action, "a county district attorney acts as a [California] state official when deciding whether to prosecute").  But Section 3205 is not limited to local agency employees who have that sort of relationship to the state.

[3] The majority says it is "skeptical" that Section 3205 should be analyzed as a governmental regulation on citizens generally because the state has plenary authority to regulate local governments on matters of statewide concern.  *See* Maj. Op. 12–13 n.6.  But this observation sheds no light on the question before us:  whether the state acts as an employer with respect to individuals who work for local governments.  The state's

II

Because California enacted and enforces Section 3205 in its capacity as sovereign, not employer, I would analyze the law as a restriction on protected political speech under ordinary First Amendment principles.

A restriction on political solicitations is unconstitutional unless it "is narrowly tailored to serve a compelling [governmental] interest." *Wolfson v. Concannon*, 811 F.3d 1176, 1180 (9th Cir. 2016) (en banc) (citation omitted).[4] A

authority to enact legislation affecting local governments' operations does not mean that the state has an employment relationship with the local governments' employees. Moreover, state law limits the degree to which California can affect local governments' employees. Under the California Constitution, the state lacks authority to regulate matters falling within "municipal affairs" of charter cities, *Cal. Fed. Sav. & Loan Ass'n. v. City of Los Angeles*, 54 Cal. 3d 1, 12–13, 24 (1991), which includes employment-related matters such as "the wage levels of contract workers constructing locally funded public works," *State Bldg. & Constr. Trades Council of Cal. v. City of Vista*, 54 Cal. 4th 547, 556 (2012). And the California Constitution also provides that each county has plenary authority over employment matters. *See* CAL. CONST. art. XI, § 1(b) (providing that each county "shall provide for the number, compensation, tenure, and appointment of [its] employees").

[4] The majority asserts that *Wolfson*'s standard of scrutiny applies only to restrictions on political solicitations by judicial candidates and does not extend to restrictions on solicitations by non-candidates or candidates for other offices. Maj. Op. 12 n.5. This argument is incorrect. *Wolfson* endorsed the plurality view in *Williams-Yulee v. Florida Bar* that "speech about public issues and the qualifications of candidates for elected office commands the highest level of First Amendment protection," 811 F.3d at 1180 (quoting *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 443 (2015)), and agreed "that strict scrutiny is appropriate here," without limiting this principle to candidates for judicial office, *id.* That the plaintiffs in *Williams-Yulee* and *Wolfson* were campaigning for

speech restriction "is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (citation omitted). Thus, where a court "find[s] a substantial mismatch between the Government's stated objective and the means selected to achieve it," the challenged speech restriction fails strict scrutiny review. *McCutcheon,* 572 U.S. at 199.

California has not demonstrated either a compelling interest or narrowly tailored means. First, the Supreme Court has repeatedly held that the "one permissible ground for restricting political speech" is the governmental interest in preventing quid pro quo corruption or its appearance.[5] *FEC v. Cruz*, 142 S. Ct. 1638, 1652 (2022); *see also McCutcheon*, 572 U.S. at 192 ("Any regulation [on political speech] must . . . target what we have called '*quid pro quo*' corruption or its appearance [to be constitutional]."). Here, California claims its interests in enacting Section 3205 are to prevent corruption, cronyism, and workplace coercion. Under Supreme Court precedent, the goals of preventing cronyism and workplace coercion cannot serve as a

---

judicial office was relevant to determine whether the state had a compelling interest in prohibiting solicitation, not to determine the standard of review. *See Williams-Yulee*, 575 U.S. at 445–46; *Wolfson*, 811 F.3d at 1182.

[5] In *Williams-Yulee*, the Court recognized a compelling governmental interest in protecting the integrity of the judiciary and maintaining the public's confidence in an impartial judiciary. 575 U.S. at 445. But *Williams-Yulee* was careful to clarify that "a State has compelling interests in regulating judicial elections that extend beyond its interests in regulating political elections, because judges are not politicians." *Id.* at 455. Thus, *Williams-Yulee* does not apply to restrictions on political speech outside the context of judicial elections.

compelling government interest to restrict political speech. *See Cruz*, 142 S. Ct. at 1652. Even California's interest in preventing corruption is not a compelling interest, because it is not aimed at preventing quid pro quo corruption or its appearance. *See McCutcheon*, 572 U.S. at 192 (defining quid pro quo corruption); *see also id.* at 209 ("The line between *quid pro quo* corruption and general influence may seem vague at times, but the distinction must be respected in order to safeguard basic First Amendment rights.").

Second, Section 3205 is not narrowly tailored to these asserted interests, as the majority explains. Maj. Op. 14–20. For one, California presents no evidence that state employees' solicitation of political donations from their co-workers has resulted in corruption, cronyism, or workplace coercion. Thus, California's fear, absent any factual support, is the type of "mere conjecture" that the Supreme Court has held is not "adequate to carry a First Amendment burden." *Id.* at 210 (citation omitted).

Section 3205 is also underinclusive. An underinclusive speech restriction, meaning one that "abridg[es] too little speech," *Williams-Yulee v. Fla. Bar.*, 575 U.S. 433, 448 (2015) (emphasis omitted), "creates a First Amendment concern when the State regulates one aspect of a problem while declining to regulate a different aspect of the problem that affects its stated interest in a comparable way," *id.* at 451 (emphasis omitted). Section 3205 is underinclusive because it restricts the political speech of local agency employees by prohibiting them from soliciting political donations from their co-workers, but does not prohibit the same political speech of state employees. And that underinclusion raises a First Amendment concern because solicitations among state employees equally raise the risk of actual and apparent corruption, cronyism, and workplace

coercion. California's assertion that state employees are situated differently than local employees because they are overseen by the California Department of Human Resources is unpersuasive, given that California presents no evidence that its human resources department has historically prevented corruption, cronyism, or workplace coercion due to employees' political speech, or that local agencies have failed to prevent those harms. Again, this type of conjecture is insufficient to sustain a restriction on First Amendment protected speech. *See McCutcheon*, 572 U.S. at 210.

Because I agree that Section 3205 fails under strict scrutiny, thereby constituting an unconstitutional restriction on speech, I concur in the result.